[Civ. No. 25980.   First Dist., Div. Two.   Oct. 22, 1968.]

THE PEOPLE, Petitioner, v. THE SUPERIOR COURT OF HUMBOLDT COUNTY, Respondent; SCOTT MILLEN ENGLISH et al., Real Parties in Interest.

Thomas C. Lynch, Attorney General, Derald E. Granberg and Clifford Thompson, Deputy Attorneys General, for Petitioner.

No appearance for Respondent.

Jerrold Levitin for Real Parties in Interest.

SHOEMAKER, P. J.—Petitioner, the People of the State of California, seeks writ of mandate pursuant to Penal Code, section 1538.5, subdivision (o). The sole question is whether respondent correctly granted real parties in interest's motion to suppress evidence.

On the afternoon of November 8, 1967, California Highway Patrol Officers Subberra and Coon were on duty in the vicinity of Garberville. From their patrol car they observed

defendants English and Ward driving north on Highway 101 in an old Volkswagen convertible, and that a spare tire was blocking the rear window and no exterior rearview mirrors were mounted on the sides of the car. Such being a violation of Vehicle Code, section 26709,[1] the officers signaled the Volkswagen to stop, and during the stopping the officers saw that the stoplights at the rear of the automobile were not operating properly.

When the car came to rest, both defendants stepped outside of the vehicle. The officers approached the driver, asked for his identification, and explained the "mirror" violation to him. Pursuant to Vehicle Code, section 2804, the officers then began to administer a safety check to the vehicle. Officer Subberra sat at the driver's seat of the Volkswagen and operated the safety devices while Officer Coon reported on the efficacy of the equipment. Defendants were not asked by either officer for permission to enter the automobile, nor were they asked to operate the safety devices themselves.

While Officer Subberra was administering the safety test from the driver's seat, he noticed a crack in the windshield on the passenger's side of the car. Concerned that the crack might be in both layers of glass and capable of spreading, the officer left the car, walked around to the passenger's side, and viewed the crack from the outside. He then opened the car door to observe the crack from the inside. Upon opening the door, he noticed in the rear of the car a paper sack which contained an open bottle. He examined the bottle to see if it contained alcohol; it did not and he replaced the bottle. At the time the bottle was being inspected, defendant Ward questioned the officer's authority to search the car. The officer's motives in conducting the search were explained to him, and no further objections were made.

Officer Subberra then resumed his inspection of the windshield. In doing so he put his left hand on the passenger's seat in order to support himself, and leaned in to look at the windshield. As he withdrew from the vehicle after the inspection, he looked down and noticed, in plain view, marijuana seeds on the passenger's seat. Defendants were then arrested. A subsequent search of their persons and the Volkswagen

---

[1]Vehicle Code, section 26709, provides: "Every motor vehicle . . . shall be equipped with a mirror so located as to reflect to the driver a view of the highway for a distance of at least 200 feet to the rear of such vehicle."

revealed 46 packets of marijuana in their possession, which were seized by the officers.

Subsequently, defendants moved to suppress evidence of the marijuana which had been seized at the time and place of their arrest.

Defendants allege that the evidence suppressed in the present case was the product of an unlawful search, and that the officers had no reason to submit their automobile to the safety check which resulted in the discovery of marijuana. Their attack specifically focuses on the conduct of Officer Subberra, who personally inspected the automobile and conducted the allegedly illegal entry. His inspection, they contend, was made without their permission and in violation of the constitutional guarantee against unreasonable search and seizure.

Defendants' arguments, however, are without substance. The officers testified that defendants' vehicle was stopped on the basis of an apparent "mirror" violation. (Veh. Code, § 26709.) Although the automobile was later found to be equipped with the rearview interior mirror required by statute, the tire blocked vision to the rear. The officers' conduct in requiring the vehicle to stop and submit to inspection was proper. ▮ The question of the reasonableness of the officers' conduct is determined on the basis of the information possessed by the officer at the time a decision to act is made (*People* v. *Ker* (1961) 195 Cal.App.2d 246, 253 [15 Cal.Rptr. 767]; *People* v. *Ingle* (1960) 53 Cal.2d 407, 414 [2 Cal.Rptr. 14, 348 P.2d 577]). In the present case, the officers decided to stop the Volkswagen only after they noticed that the driver's view to the rear of the automobile was obstructed by the spare tire in the back window, and an apparent violation of the law was manifest. As such, the officers had not only the right, but also the duty to investigate the circumstances of the apparent violation. (*People* v. *Nebbitt* (1960) 183 Cal.App.2d 452, 457 [7 Cal.Rptr. 8]; *People* v. *Evans* (1966) 240 Cal.App.2d 291, 298 [49 Cal.Rptr. 501].)

As the Volkswagen pulled to the side of the road in response to police signals, the officers noted that the taillights did not properly indicate the stop. This mechanical defect, combined with the fact that the tire in the back seat obstructed the operator's rear view of the road, suggested a violation of Vehicle Code, sections 24002 and 24603.[2] As

---

[2]Section 24002 provides, in part, that "It is unlawful to operate any vehicle . . . which is in an unsafe condition, which is not equipped as required by this code, or which is not safely loaded."

such, the officers were authorized to proceed under section 2804 of the Vehicle Code, which directs that "A member of the California Highway Patrol upon reasonable belief that any vehicle is being operated in violation of any provisions of this code or is in such unsafe condition as to endanger any person, may require the driver of the vehicle to stop and submit to an inspection of the vehicle, and its equipment, license plates, and registration card."

■ Since the Volkswagen was being operated in violation of the Vehicle Code, and since at least one mechanical defect had already been spotted, it was not unreasonable for the officers to suspect the existence of other defects. Under these circumstances, the right to make the safety check authorized by section 2804 was created. However, defendants assert that the inspection was conducted in an unlawful manner, in that Officer Subberra had no authority to enter the vehicle; instead, he should have asked defendants to operate the safety devices themselves.

The answer to this position is obvious. An effective safety inspection cannot always be conducted from the outside of a vehicle. An individual with bad brakes, for example, who is allowed to operate his own safety devices, will often hide from the officers the fact that the brake pedal on his vehicle must be pushed to the floor before the brakes will function. Individuals who are inebriated or otherwise incapacitated, furthermore, are often unable to operate the devices, and the officer must enter the automobile to conduct the inspection himself.

■ In the present case, Officer Subberra entered the vehicle under the authority of section 2804 only after defendants had demonstrated the unsafe condition of the car. His motive in effecting the entry was to protect the public safety by inspecting the vehicle's mechanical devices; entry was necessary to assure the proper and effective testing of the devices. Officer Subberra's conduct was reasonable and lawful. (Veh. Code, § 2804.)

The inspection of the cracked windshield was properly carried out under section 2804 of the Vehicle Code, for the crack could be dangerous to passengers and was capable of impair-

---

Section 24603 provides that "Every motor vehicle . . . shall at all times be equipped with not less than one stop lamp on the rear which shall emit a red or amber light and which shall be actuated upon application of the service (foot) brake. . . . Every such new vehicle . . . first registered after January 1, 1958, shall be equipped with not less than two such stop lamps on the rear. . . . Whenever any vehicle is equipped with two stop lamps, both stop lamps shall be in good working order. . . ."

ing the driver's visibility in violation of Vehicle Code, section 26710.[3] The officer, furthermore, could not effectively inspect the condition of the inside windshield without leaning into the car. Hence, his act in so doing did not constitute an illegal entry.

Since the officer had lawfully leaned into the Volkswagen, he was not required to blind himself to what was in plain view, even though the evidence was disconnected with the purpose for which he entered. (*People* v. *Roberts* (1956) 47 Cal.2d 374, 379 [303 P.2d 721].) His discovery of the marijuana seeds, furthermore, was not the product of a search. "A search implies a prying into hidden places for something that is concealed, something that has been intentionally put out of the way." (*People* v. *Alvarez* (1965) 236 Cal.App.2d 106, 112 [45 Cal.Rptr. 721].) Things that are openly visible do not require a search for their discovery. (*People* v. *Baranko* (1962) 201 Cal.App.2d 189, 195 [20 Cal. Rptr. 139].) We cannot agree that a search was necessary to discover the seeds, or that the seeds were in any sense hidden.

The order suppressing the evidence being improper, let the writ of mandate issue herein directing the trial court to vacate and set aside said order.

Agee, J., and Taylor, J., concurred.

A petition for a rehearing was denied November 21, 1968, and the petition of the real parties in interest for a hearing by the Supreme Court was denied December 18, 1968.

---

[3]Section 26710 provides: "It is unlawful to operate any motor vehicle upon a highway when the windshield or rear window is in such a defective condition as to impair the driver's vision either to the front or rear."