UNITED STATES of America,
Plaintiff–Appellee,

v.

Paul Richard PORTILLO,
Defendant–Appellant.

UNITED STATES of America,
Plaintiff–Appellee,

v.

Daniel C. MONTELLANO,
Defendant–Appellant.

Nos. 79–1407, 79–1481.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 4, 1980.

Decided Dec. 12, 1980.

1314

Stephen J. Hillman, Joseph Shemaria, Los Angeles, Cal., for defendant–appellant.

James P. Walsh, Asst. U. S. Atty., Los Angeles, Cal., for plaintiff–appellee.

Before SNEED, SCHROEDER and ALARCON, Circuit Judges.

ALARCON, Circuit Judge:

Paul Richard Portillo and Daniel Chavez Montellano appeal from the judgment of conviction following a trial by jury in which they were found guilty of armed bank robbery in violation of 18 U.S.C. Section 2113(a) (1970).

Appellants have raised many issues on appeal. Two require detailed analysis. The remainder are either without merit or have already been resolved by existing case law.

For the reasons set forth below, we conclude that the warrantless search of the paper bag found in the trunk of the car was justified as an incident to a vehicle inspection and because of the exigent circumstances confronting the officer. We also hold that appellants whose appeals were pending at the time that *United States v. Cook*, 608 F.2d 1175 (9th Cir. 1979) (en banc), *cert. denied*, 444 U.S. 1034, 100 S.Ct. 706, 62 L.Ed.2d 670 (1980), was decided may challenge the ruling of the district court as to the admissibility of their prior convictions in spite of the fact they neither took the stand nor made an offer of proof as to the nature of the testimony they would have offered.

*VALIDITY OF THE PAPER BAG SEARCH*

Appellants contend that the trial court erred in denying their motions to suppress the physical evidence seized from the locked trunk of an automobile without a search warrant.

The government presented the following evidence in justification of the search:

On November 16, 1978, the Norwalk branch office of American Savings and Loan Association was robbed by two armed men, who fled with $747 in cash. On November 20, 1978, Los Angeles County Deputy Sheriff James Clem was in a one-man radio patrol car in East Los Angeles. At approximately 2:00 p.m. he was stopped by another deputy who had been patrolling in an unmarked sheriff's vehicle, and was told that two known felons were in the area in a 1969 green Dodge, license number ZAZ 197. While Clem was talking with the other deputy, he heard a report over his car radio that other officers had observed the two individuals place a paper bag into the trunk of their car. Deputy Clem advised all patrol units in the East Los Angeles area that two known felons were in the general vicinity and then resumed his normal patrol. Later he saw the green Dodge make an illegal left turn. Clem followed the vehicle and attempted to make a traffic stop, but the Dodge entered the freeway before he was able to pull it over. As the driver of the vehicle applied his brakes to make the turn onto the freeway, Clem noticed that the right rear brake light was not working. Clem followed the Dodge onto the freeway and activated his red lights to pull the vehicle over. At that time, Deputy Clem also noted that the license plate registration tags had expired.

When Deputy Clem approached the vehicle, he asked the driver for identification and vehicle registration. Montellano, who was driving the vehicle, stated that he was unable to find the vehicle's registration. Deputy Clem noticed an open bottle of beer on the floor of the vehicle and an odor of alcohol on the breath of the passenger, Portillo. The Deputy ordered both men out of the car and conducted a pat–down search of each individual. He found a small knife on Portillo. Then, while Montellano and Portillo sat on a nearby guardrail as ordered, Clem entered the car, opened the glove box, and found the vehicle registration. He removed the key from the ignition and went to the rear of the car to inspect the faulty taillight. He opened the trunk to look at the fixture from the inside, supporting his weight on his left hand which he placed on top of a paper bag in the center of the spare tire hub. He immediately felt a hard object inside the bag which felt like a handgun. He opened the bag and found a fully loaded 38–caliber colt revolver. Also in the

bag were a pair of black glasses, a knit cap and extra ammunition. Clem noticed that there was a second brown paper bag, similar in appearance to the first. Inside that bag Clem found another fully loaded handgun and other items similar to those found in the first bag.

Deputy Clem was cross–examined regarding his reasons for opening the trunk of the Dodge. Deputy Clem explained that it was his experience when a taillight is not working, the malfunction is usually caused by a loose bulb. The only way to determine the nature of the problem is to open the trunk and look at the fixture from the inside. He said that as a matter of his training and experience, he felt he was entitled to conduct an inspection to determine the cause of any mechanical defect which could effect the safe operation of a vehicle on the road. He did not invite the driver to fix the brake light, or obtain permission to open the trunk. He knew that he could have issued a citation and sent the men on their way, but felt that the problems created by driving with a broken taillight would continue. He said that when he looked into the trunk, he saw the bulb hanging away from the receptacle. He then leaned further into the trunk, bracing himself by leaning on the paper bag, which he said was the only clean spot in the trunk. He said that he did not want to put his hand on any of the filthy surfaces, since he was dressed in his deputy's uniform. It was at this point that he felt the hard object that he "knew" was a handgun, precipitating his search of the two paper bags in the trunk. Deputy Clem declared that "based upon what I found in the bags in the trunk and the information learned over the radio, I felt that the two men might well be robbers and I determined to place them under arrest on suspicion of robbery."

Appellants were arrested on suspicion of robbery and transported to the Sheriff's Station for booking. They were fingerprinted and photographed, but released when charges were not filed by the Los Angeles County District Attorney.

The Government contends that neither appellant has standing to raise the alleged illegality of the search of the trunk of the Dodge and the seizure of the paper bags containing the automatic weapons. Just prior to trial of this case, the United States Supreme Court decided *Rakas v. Illinois*, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978). In *Rakas* the Supreme Court held that the proper test to be applied in determining whether a defendant is a "person aggrieved by an unlawful search and seizure" Fed.R.Crim.P., Rule 41(e), is whether that person has suffered an invasion of a legitimate expectation of privacy.

*Rakas* held that two *passengers* in an automobile could not raise fourth amendment violations as to the seizure of items found in the glove box and passenger compartment of the vehicle. The Court noted that the defendants:

> [A]sserted neither a property nor a possessory interest in the automobile, nor an interest in the property seized. And as we have previously indicated, the fact that they were "legitimately on [the] premises" in the sense that they were in the car with the permission of its owner is not determinative of whether they had a legitimate expectation of privacy in the particular areas of the automobile searched ... they made no showing that they had any legitimate expectation of privacy in the glove compartment or area under the seat of the car in which they were merely passengers. Like the trunk of an automobile, these are areas in which a passenger *qua* passenger simply would not normally have a legitimate expectation of privacy. *Id.* at 148–49, 99 S.Ct. at 433.

In the instant case, the Government points out that neither appellant has alleged that he has a possessory interest in the property seized.[1] Montellano, however,

---

1. The Government argues that the paper bags alone were the subject of a search within the meaning of the fourth amendment, since only an inspection was conducted of the trunk of the Dodge. The Government points out that neither appellant has claimed any property inter-

asserted in his motion to suppress that he had a legitimate possessory interest in the automobile, because possession of the vehicle had been entrusted to him together with the keys to the ignition and trunk. Portillo, on the other hand, took the position in his motion to suppress that under California law (*People v. Martin*, 45 Cal.2d 755, 290 P.2d 855 (1955)), he need not claim an interest in the property seized to assert standing to object to a fourth amendment violation. However, it is clearly the law in this circuit that the issue of standing is to be determined under federal law. *United States v. Cella*, 568 F.2d 1266, 1279 (9th Cir. 1977). Portillo initially argues that criminal defendants arrested before *Rakas* was decided but tried afterwards have standing. This claim is without merit.

■ Under the facts of this case, Portillo is in the same position as were the petitioners in *Rakas*. He was merely a passenger in the Dodge. He "asserted neither a property nor a possessory interest in the automobile, nor an interest in the property seized." *Rakas v. Illinois*, 439 U.S. at 148, 99 S.Ct. at 433. Therefore, he does not possess an expectation of privacy which the fourth amendment was designed to protect.

■ Montellano, on the other hand, is very much in the same position as was the defendant in *Jones v. United States*, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960). As the Supreme Court pointed out in *Rakas*: "Jones not only had permission to use the apartment of his friend, but had a key to the apartment with which he admitted

himself on the day of the search and kept possessions in the apartment. Except with respect to his friend, Jones had complete dominion and control over the apartment and could exclude others from it." *Rakas v. Illinois*, 439 U.S. at 149, 99 S.Ct. at 433. Here, Montellano had both permission to use his friend's automobile and the keys to the ignition and the trunk, with which he could exclude all others, save his friend, the owner. Montellano, therefore, possesses the requisite legitimate expectation of privacy necessary to challenge the propriety of the search.

■ The Government seeks to justify the intrusion by Deputy Clem into the trunk of the Dodge on the basis that it was a vehicle safety inspection as authorized by California Vehicle Code Section 2806.[2] The trial judge accepted the Deputy's testimony that his purpose in opening the trunk was to determine the cause of the malfunctioning taillight. Also, the court found credible Clem's testimony that he inadvertently placed his hand upon the paper bag in the center of the spare tire. We cannot set aside these findings unless they are clearly erroneous. *United States v. Botero*, 589 F.2d 430, 433 (9th Cir. 1978), *cert. denied*, 441 U.S. 944, 99 S.Ct. 2162, 60 L.Ed.2d 1045 (1979). We are particularly mindful of this principle when such findings are based upon a function inherently within the exclusive purview of the trial court—the determination of the credibility of a witness. The court's findings are fully supported by the

est in the paper bags. Therefore, the Government claims that neither appellant has shown that he was the victim of an invasion of privacy. *United States v. Cella*, 568 F.2d 1266, 1279 (9th Cir. 1977). However, because the ultimate question is whether Montellano had a reasonable expectation of privacy in the paper bags and our resolution of that question would not be altered even if Montellano had asserted ownership of the bags, *United States v. Salvucci*, — U.S. —, —, 100 S.Ct. 2547, 2552, 65 L.Ed.2d 619 (1980), and *Rawlings v. Kentucky*, — U.S. —, —, 100 S.Ct. 2556, 2562, 65 L.Ed.2d 633 (1980), we proceed directly to the substantive fourth amendment issue without pausing to discuss the "standing" issue raised by the Government. Under *Rakas v. Illinois*,

the question of standing is subsumed within the substantive fourth amendment claim.

2. Section 2806 reads as follows:

Any regularly employed and salaried police officer or deputy sheriff having reasonable cause to believe that any vehicle or combination of vehicles is not equipped as required by this code or is in such unsafe condition as to endanger any person, may require the driver to stop and submit the vehicle or combination of vehicles to an inspection and such tests as may be appropriate to determine the safety to persons and compliance with the code.

California Vehicle Code Section 2806 (West 1971).

record.[3] Therefore, the question before us is whether, as a matter of law, Section 2806 provides authorization for an officer to make a reasonable inspection to determine the nature and extent of a vehicle code violation.

Appellants claim that Section 2806 merely authorizes an officer to issue a citation and not to conduct a search. Further, they argue that since the officer lacked probable cause to enter the trunk, his "pretext" of making a safety inspection does not justify violation of their fourth amendment rights.

Section 2806 has previously been construed in the search and seizure context in California. In *People v. May*, 76 Cal.App.3d 543, 143 Cal.Rptr. 45 (1977), the court of appeal said that the phrase "reasonable cause" as used in Section 2806 is not to be equated with the "probable cause" requirement for non-consensual searches. It further held that "once an officer has observed the unsafe condition of a vehicle he has authority to make whatever inspection is necessary to protect the public safety by inspecting the affected mechanical devices." *Id.* at 546, 143 Cal.Rptr. 45. The court relied on *People v. Superior Court (English)*, 266 Cal.App.2d 685, 72 Cal.Rptr. 261 (1968), in support of this conclusion. In that case, the court held that Section 2804 (authorizing inspections by highway patrolmen as opposed to members of the sheriff's department as in Section 2806) authorized officers to "investigate the circumstances of the apparent violation." *Id.* at 688, 72 Cal.Rptr. 261.

The facts before this court in the instant matter are similar to those reviewed in the *May* case. In *May*, a deputy sheriff stopped a vehicle which was being operated in violation of a number of vehicle code sections. On closer inspection, the deputy noticed

that the A–arm suspension had been cut. Hydraulic tubes protruded past the frame and ran to the rear of the vehicle. Based on past experience, the deputy believed that the suspension system might be dangerous, and that the equipment necessary for such a system would be housed in the trunk of the automobile. The deputy opened the trunk to determine whether the vehicle had an unsafe and illegal suspension system installed. Upon examination of the trunk area, he found several folded baggies in plain view which he believed to contain marijuana.

In reversing the trial court's suppression of this evidence, the appellate court distinguished what it termed "two entirely different doctrines: the issue of probable cause under the criminal law to invade the suspect's privacy, and the question of the reasonableness of a vehicle inspection for observed defects having nothing to do with [criminal activity]." *People v. May*, 76 Cal. App.3d at 547, 143 Cal.Rptr. at 47.

Appellant Montellano's argument that *United States v. Patacchia*, 602 F.2d 218, modified 610 F.2d 648, (9th Cir. 1979), compels us to invalidate Deputy Clem's search of the trunk because of lack of probable cause is misplaced. In *Patacchia*, we held that the search of the trunk of an automobile was unlawful because the officers did not have probable cause to believe that they would find contraband or instrumentalities of crime, but merely a "strong hunch." Montellano claims that all Clem had was a hunch that whatever was put into the trunk of an automobile by known felons would be of interest to law enforcement officers. This argument ignores the fact that the trial judge held that the *inspection* of the trunk of the Dodge was made pursuant to

---

**3.** We cannot be concerned with whether this court, sitting as a trier of fact, or another trial judge would have believed Deputy Clem's motives for opening the trunk of the Dodge. It is possible that another trial judge would have found the Deputy's testimony incredible. It is true that the trial judge knew that Clem was on notice that the men were suspected felons and that they had been observed placing a paper bag in the trunk of the vehicle. Nonetheless,

based upon the content of Clem's testimony and his demeanor on the stand, the trial judge ruled that the evidence found in the trunk should not be suppressed since the Deputy had opened the trunk for a valid purpose under Section 2806 and inadvertently discovered that the bag in the hub of the spare tire contained a hard object which felt like a hand gun. We are bound by this determination of the trial court.

Section 2806, for which probable cause is not a requirement.

Appellants argue that "[a]n individual operating or traveling in an automobile does not lose all reasonable expectation of privacy simply because the automobile and its use are subject to government regulation." *Delaware v. Prouse,* 440 U.S. 648, 662, 99 S.Ct. 1391, 1400, 59 L.Ed.2d 660 (1979). However, inspection of a malfunctioning taillight to determine the extent of the malfunction—whether it is merely a loose bulb or a more extensive electrical wiring degeneration—is not the "unfettered governmental intrusion" denounced in *Prouse. Id.* at 663, 99 S.Ct. at 1401. Nor is this the type of roving administrative inspection condemned in *Camara v. Municipal Court,* 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967).

In *United States v. Soto–Soto,* 598 F.2d 545 (9th Cir. 1979), this court held that in order for a search under California Vehicle Code Section 2805 (authorizing a California Highway Patrol Officer to examine vehicles to determine if they are stolen) to be within constitutional limitations, there must be a "founded suspicion of illegal activity." *Id.* at 547. Appellants ask that this court require that a showing of reasonable necessity be made to validate an inspection under Section 2806. However, the requirement under Section 2806 that the inspecting officer have "reasonable cause to believe that any vehicle or combination of vehicles is not equipped as required by this code or is in such unsafe condition as to endanger any person" comports with our holding in *Soto–Soto* and that of the Supreme Court in *Prouse.* Here the officer had reasonable cause to believe that the vehicle was being operated in a manner which was both unsafe and in violation of the Vehicle Code. Therefore, he was authorized under Section 2806 to "require the driver to stop and submit the vehicle . ,. to an inspection and such tests as may be appropriate to determine the safety to persons and compliance with the code."

The *May* court said, "[s]uch a search must of course be reasonable . . . ." *People v.*

*May,* 76 Cal.App.3d at 546, 143 Cal.Rptr. at 46. The court then pointed out that if the defect was merely a broken taillight *reflector,* a search of the trunk would not be reasonable. We agree. Here, however, the defect was one that was not only a code violation, but a threat to the safety of persons on the highway. It was of a type which may have had hidden causes, either readily remedied or pointing to more serious safety problems or code violations. Therefore, an inspection more intrusive than the casual observation of the exterior of the vehicle was reasonable. Accordingly, Deputy Clem was justified in conducting an inspection of the trunk of the Dodge under Section 2806.

■ Appellants also argue that the search of the paper bags and seizure of the contents was a violation of their constitutional rights. It is, of course, true that a justified search of an automobile, whether under the so-called "automobile exception" to the warrant requirement of the fourth amendment or pursuant to a valid safety inspection as in this case, does not serve to validate the subsequent warrantless search of a closed container found in that vehicle. In *Arkansas v. Sanders,* 442 U.S. 753, 99 S.Ct. 2586, 61 L.Ed.2d 235 (1979), the Supreme Court differentiated between the levels of privacy which the Constitution protects in varying types of personal property. In *Sanders* the Supreme Court invalidated the warrantless search of luggage seized from a parked automobile on the basis that there is a greater expectation of privacy in luggage than in an automobile itself, and that once the piece of luggage had been reduced to the exclusive control of the officer, no exigent circumstances existed to excuse the warrant requirement. Appellants contend that the same situation obtains in this case. We disagree.

First, in *Arkansas v. Sanders,* the Supreme Court pointed out that "[n]ot all containers and packages found by police during the course of a search will deserve the full protection of the Fourth Amendment." 442 U.S. at 764 n.13, 99 S.Ct. at 2593 n.13. In *United States v. Mackey,* 626

F.2d 684 (9th Cir. 1980), this court noted that "[a] paper bag is among the least private of containers. It is easily torn, it cannot be latched, and, to a greater extent than most containers, its contents can frequently be discerned merely by holding or feeling the container." *Id.* at 687. Accordingly, the court concluded that "Mackey did not possess a sufficient privacy interest in the paper bag to justify imposing the warrant requirement." *Id.* See also *United States v. Ross,* No. 76–1624 (D.C.Cir.1980), wherein the D.C. Circuit similarly found that the "defendant could not reasonably harbor an expectation of privacy in his paper bag beyond that existing due to actual possession . . . ."

In the instant case, Deputy Clem was able to identify the contents of the paper bag by touching it. As the Supreme Court observed in *Sanders,* "some containers (for example a kit of burglars tools or a gun case) by their very nature cannot support any reasonable expectation of privacy because their contents can be inferred from their outward appearance." *Arkansas v. Sanders,* 442 U.S. at 764–65 n.13, 99 S.Ct. at 2593 n.13. Here, the contents of the paper bag were apparent from the outward feel of the container. Under the reasoning of *Sanders* and *Mackey,* appellants did not possess a reasonable expectation of privacy in the paper bags.

Second, when Deputy Clem opened the trunk of the automobile and placed his hand on the handgun in the paper bag he stood alone by the side of a busy freeway with two suspected felons. Neither of the suspects was handcuffed. They were merely sitting nearby on the freeway guard rail. Portillo, at least, had been drinking. Deputy Clem was faced with a rapidly developing investigative situation which warranted his determining immediately, for his own safety, whether what he felt was in fact a weapon, whether it was loaded or unloaded, and whether, if loaded, the safety was in place. In *Sanders,* the Court carefully framed the question to be answered by the Court in that case: "whether, in the absence of exigent circumstances, police are required to obtain a warrant before searching luggage taken from an automobile properly stopped and searched for contraband." *Id.* at 754, 99 S.Ct. at 2588. In that case, because there were no exigent circumstances, the court found that a warrant was required. In this case, however, exigent circumstances were present which justified Deputy Clem's warrantless search of the bags.

Finally, as in *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), which validated warrantless pat–down searches for weapons, the officer in this case was acting reasonably in his limited intrusion for the purpose of discovering weapons. In *United States v. Wilkerson,* 598 F.2d 621 (D.C.Cir.1978), the D.C. Circuit approved a search of an automobile for weapons relying on the *Terry* rationale. In that case, the officer reached into the suspect's car and patted down the jacket which was lying on the front seat and appeared to be wrapped around something. The pat–down revealed that the coat was concealing an object which felt like a shotgun. When the officer took the coat from the car and unwrapped it, he found that it contained a sawed–off shotgun with a shell in the chamber. The court held that under *Terry v. Ohio,* "evidence discovered in the course of a reasonable search for weapons for the protection of a police officer has been admissible so long as the officer has reason to believe that he is dealing with an armed and dangerous person . . . " *Id.* at 624. The court concluded that "[t]he officer's action in reaching into the front seat and patting the outside of the coat lying there in plain view was a reasonable and proper protective search for a weapon; the subsequent grasping of the weapon under the coat . . . followed inexorably." *Id.* at 625–26.

In the instant case, the officer's initial inadvertent contact with the paper bag which lightly shielded the revolver justified a search "confined in scope to an intrusion reasonably designed to discover guns, knives, clubs, or other hidden instruments for the assault of the police officer." *Terry v. Ohio,* 392 U.S. at 29, 88 S.Ct. at 1884.

## PRIOR FELONY CONVICTIONS

 Appellants request that we apply our *en banc* decision in *United States v. Cook*, 608 F.2d 1175 (9th Cir. 1979) (en banc), *cert. denied*, 444 U.S. 1034, 100 S.Ct. 706, 62 L.Ed.2d 670 (1980), to their appeals. They were tried before *Cook* was decided, when *United States v. Murray*, 492 F.2d 178 (9th Cir. 1973), *cert. denied*, 419 U.S. 942, 95 S.Ct. 210, 42 L.Ed.2d 166 (1974), was still the law in this circuit. Under *Murray*, a defendant who did not testify at trial could not challenge on appeal the District Court's ruling on the admissibility of his prior convictions. In *Cook*, we concluded that "Cook did not, by remaining off the stand, forfeit the right to have the point reviewed on appeal" 608 F.2d at 1186. However, we also stated that in future cases, failure to make the record contemplated in Rule 103 of the Federal Rules of Evidence[4] would be construed as abandonment of the issue on appeal. *Id.*

Appellants in the case before us did not comply with Rule 103 at trial. They did object to the court's ruling on admissibility of the prior conviction. Moreover, they did not make an offer of proof as to the testimony they would offer but for the court's ruling. They did not take the stand. In short, appellants are in exactly the same posture before this court as was Cook in his appeal. We cannot conclude that appellants, unaware of the requirements of the yet unpublished *Cook* decision, can be said to have abandoned the issue of the admissibility of the prior conviction by failing to comply with Rule 103.

Prior to *Cook*, defendants who believed that the district court had ruled incorrectly were led to believe by *Murray* that only a Hobson's choice was available to them. Ei-ther they could remain off the stand, thereby foregoing the opportunity personally to present a defense, or they could take the stand and give the prosecutor an opportunity to destroy their credibility by exposing evidence of their prior convictions to the jury. While *Murray* was still the law, defendants who made the showing required by Rule 103 would still have found themselves precluded from raising the admissibility of their prior convictions on appeal if they did not testify at trial. It is not surprising then that both Cook and appellants failed to make the record contemplated by Rule 103. Our decision to reach the issue of the admissibility of appellants' prior convictions despite their failure to make a Rule 103 record avoids "the brutal absurdity of commanding a man today to do something yesterday." Lon Fuller, *The Morality of Law* 59 (1964).

Furthermore, reaching the issue as to the admissibility of the prior convictions despite appellants' failure to testify comports with the "limited retroaction" rule of *Linkletter v. Walker*, wherein the Supreme Court said that "a change in law will be given effect while a case is on *direct review*." 381 U.S. 618, 627, 85 S.Ct. 1731, 1736, 14 L.Ed.2d 601 (1965) (emphasis added). *See also Hamling v. United States*, 418 U.S. 87, 102, 94 S.Ct. 2887, 2899, 41 L.Ed.2d 590 (1974). We stress that *Cook* was a case involving the ability to raise an issue on *direct appeal*. *Cook* removed a barrier erected by this court in *Murray* to raising issues on appeal concerning the correctness of the district court's ruling as to the admissibility of evidence. Likewise, Rule 103 itself deals only with requirements for raising admissibility of evidence issues *on appeal*. Neither *Cook* nor Rule 103 involves challenges to convic-

---

4. Rule 103 of the Federal Rules of Evidence provides in pertinent part as follows:

 (a) Effect of erroneous ruling. Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and

 (1) Objection. In case the ruling is one admitting evidence, a timely objection or motion to strike appears of record, stating the specific ground of objection, if the specific ground was not apparent from the context; or

 (2) Offer of proof. In case the ruling is one excluding evidence, the substance of the evidence was made known to the court by offer or was apparent from the context within which questions were asked.

 (b) Record of offer and ruling. The court may add any other or further statement which shows that character of the evidence, the form in which it was offered, the objection made, and the ruling thereon. It may direct the making of an offer in question and answer form...

tions brought before the court on collateral attack. Under "limited retroaction," appellants Portillo and Montellano are entitled to the benefit of the change in the law which holds that by remaining off the stand they did not forfeit the right to have the District Court's ruling reviewed on appeal.[5]

### EVIDENCE OF MONTELLANO'S PRIOR CONVICTION

■ The district court denied appellant Montellano's motion to exclude evidence of prior felony convictions and ruled that the Government would be allowed to impeach appellant with a 1971 burglary conviction. Appellant fails to articulate wherein the district court abused its discretion in denying the motion. Rather, appellant states simply that "the denial of the motion was error in that it effectively prevented appellant from presenting any evidence concerning his alibi." This, of course, is not enough. To obtain relief from this court, appellant must show that he was kept off the stand by a ruling that was, in and of itself, erroneous. It is clear that criminal defendants are not entitled to a false aura of veracity when they take the stand.

When an accused elects to become a witness and testify in his own behalf, "his credibility may be impeached, his testimony may be assailed, and is to be weighed as that of any other witness. Assuming the position of a witness, he is entitled to all its rights and protections, and is subject to all its criticisms and burdens." *Reagan v. United States*, 157 U.S. 301, 305, 15 S.Ct. 610, 611, 39 L.Ed. 709 (1895).

Assuming for the sake of argument that Montellano's assertion of error is that the district court judge abused his discretion by failing to weigh the prejudicial effect of the prior conviction against its probative value, we find no such infirmity in this case. In denying the motion, the trial judge said:

The court's ruling, as previously stated *having balanced the interests*, that is, *of possible prejudice as against probative value for credibility of (sic) impeachment purposes*, it ruled as follows: with respect to defendant Montellano, the Government would be and will be permitted to interrogate as to whether the defendant was convicted of a felony; if they are put to their proofs, there will be permitted proof of the 1971 burglary conviction. There

5. We are aware that the Supreme Court has circumscribed the limited retroaction doctrine of *Linkletter v. Walker* in a certain class of cases. In *Johnson v. New Jersey*, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966), the Supreme Court held that there were no jurisprudential or constitutional obstacles to a purely prospective application of constitutional rules of criminal procedure fashioned by the Court. The Court refused to distinguish between cases on direct appeal and those on habeas corpus and held that the "exigencies of the situation" would govern resolution of retroactivity prospectivity questions. *Id.* at 726–27, 86 S.Ct. at 1777. See, e. g., *Brown v. Louisiana*, —— U.S. —— ——, 100 S.Ct. 2214, 65 L.Ed.2d 159 (1980); *Daniel v. Louisiana*, 420 U.S. 31, 95 S.Ct. 704, 42 L.Ed.2d 790 (1975); *Gosa v. Mayden*, 413 U.S. 665, 93 S.Ct. 2926, 37 L.Ed.2d 873 (1973); *Ivan V. v. City of New York*, 407 U.S. 203, 92 S.Ct. 1951, 32 L.Ed.2d 659 (1972); *Desist v. United States*, 394 U.S. 244, 89 S.Ct. 1030, 22 L.Ed.2d 248 (1969); *McConnell v. Rhay*, 393 U.S. 2, 89 S.Ct. 32, 21 L.Ed.2d 2 (1968); *Roberts v. Russell*, 392 U.S. 293, 88 S.Ct. 1921, 20 L.Ed.2d 1100 (1968).

In *Hamling v. United States*, 418 U.S. 87, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974), and *Jenkins v. Georgia*, 418 U.S. 153, 94 S.Ct. 2750, 41 L.Ed.2d 642 (1974), eight years after *Johnson v. New Jersey* was decided, the Supreme Court

again applied the doctrine of limited retroaction. In *Hamling* and *Jenkins*, the Court applied the newly articulated obscenity test of *Miller v. California*, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973), to cases still on direct review. In so doing the Court cited *Linkletter v. Walker* and *Bradley v. Richmond School Board*, 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974), for the proposition that a change in the law will be given effect in those cases on direct appeal. In *Bradley*, the Court also used the retroaction doctrine when it applied Section 718 of Title VII, which grants authority to a federal court to award attorneys' fees in school desegregation cases, to a case in which the attorney's fees had been incurred prior to the enactment of Section 718. The Court cited *Linkletter* approvingly for the Court's past recognition of a "distinction between the application of a change in the law that takes place while the case is on direct review, on the one hand, and its effect on a final judgment under collateral attack, on the other hand" (footnotes omitted). *Id.* at 710–711, 94 S.Ct. at 2015.

The rule announced in *Cook* does not involve a constitutionally protected right. Rather, *Cook* removed an obstacle to appellate review. For that reason, the doctrine of limited retroaction is applicable to appellants' cases.

will be no proof of the nature of the felony adduced by the Government unless it is put to its proofs (emphasis added).

The judge ordered the Government not to mention Montellano's two other prior convictions, one for carrying a weapon in a penal facility and one for escape.

■ We recognize that the Government has the burden of persuasion on the issue of admissibility of prior convictions for the purpose of impeaching an accused who chooses to testify on his own behalf. *United States v. Cook*, 608 F.2d at 1185 n.8. However, we believe that the prosecution met this burden in regard to Montellano. The trial judge did not abuse his discretion in ruling that the 1971 burglary conviction was admissible for impeachment purposes. Since the evidentiary ruling was correct, Montellano cannot complain that he elected to remain off the stand rather than be impeached. This is the very choice to which a defendant may properly be put.

### EVIDENCE OF PORTILLO'S PRIOR CONVICTIONS

■ Appellant Portillo's contentions regarding the inadmissibility of his prior convictions are quite different from Montellano's. The court denied Portillo's motion to exclude his prior convictions which were more than ten years old at the time of trial.[6] Portillo claims that the district judge failed to make the required findings of specific facts and circumstances justifying the introduction of his stale convictions. We agree.

■ Under Rule 609(b), the prosecution must present evidence upon which the court can determine that the probative value of the remote conviction *substantially* outweighs its prejudicial effect. This finding must be supported by specific facts and circumstances which demonstrate that the interests of justice require that the evidence be admitted despite the presumption in subsection (b) against its admissibility. See e. g. *United States v. Mahler*, 579 F.2d 730, 734–736 (2nd Cir. 1978); *United States v. Cavender*, 578 F.2d 528, 531 (4th Cir. 1978); *United States v. Sims*, 588 F.2d 1145, 1149 (6th Cir. 1978). The trial judge did not make the findings required by Rule 609(b). Presumptively, Portillo's remote prior convictions were inadmissible for impeachment purposes. The ruling of the district court judge violated both the language and purpose of Rule 609(b).

In light of the foregoing, Portillo's case must be remanded so that the district court can conduct proceedings consistent with Rule 609(b). See *United States v. Cook*, 608 F.2d at 1185 n.8. If the trial court determines that the prior convictions were inadmissible and that the ruling as to admissibility was prejudicial to Portillo, he is to be afforded a new trial. If the trial court decides that the prior convictions were admissible or that they were inadmissible but the error was not prejudicial, the judgment will stand subject to further review on appeal limited to the correctness of such ruling.

### EYEWITNESS IDENTIFICATION OF MONTELLANO

#### The Warrantless Arrest

■ Having determined that the search of the trunk of the Dodge was lawful, we

---

**6.** At the time of trial, Portillo had suffered four prior felony convictions: in 1963 for theft, in 1964 for heroin possession, in 1968 for armed robbery and in 1971 for robbery and assault with intent to commit murder. The district court judge ruled that if Portillo took the stand he could be impeached with the 1963 and 1968 convictions without reference to the nature of the crimes involved. Clearly, the 1963 conviction was more than ten years old at the time of trial. There is doubt as to the age of the 1968 armed robbery conviction within the meaning of Rule 609(b). The ten years is to be measured from "the date of conviction or of the release of the witness from the confinement imposed for that conviction, whichever is the later date" ... Fed.R.Evid. Rule 609(b).

It appears from the record that 1968 is the date of the armed robbery *conviction*; no evidence was introduced to show otherwise. Since we have determined for the reasons discussed below, that Portillo's case must be remanded to the district court, this factual uncertainty can be resolved there. We note that the Government's burden of showing admissibility of prior convictions, *United States v. Cook*, 608 F.2d at 1185 n.8, would include *proof that a particular conviction was less than ten years old within the meaning of Rule 609(b).*

need not consider Montellano's arguments that the mug shots and the eyewitness identifications were the fruits of an illegal *search*. Montellano also argues that the mug shots are the fruit of an illegal *arrest* and that the eyewitness identification based upon them should have been suppressed. We disagree.

Appellant complains that he was arrested for "robbery in general," but cites no authority for his contention that a warrantless arrest must be based upon probable cause that a particular crime has been committed. Under California Penal Code Section 836(3), Deputy Clem was entitled to arrest appellant if the officer had reasonable cause to believe that appellant had "committed a felony, whether or not a felony [had] in fact been committed." *Cal.Penal Code Section* 836(3) (West 1970). Montellano's arrest, based upon reasonable cause that he had committed a robbery, was valid even though no felony had been committed by him, or in fact, by anyone.

### Pretrial Photographic Displays

 Montellano contends that showing an eyewitness surveillance photographs taken of the robbery as it occurred was impermissibly suggestive. In *United States v. Ervin*, 436 F.2d 1331, 1333–34 (5th Cir. 1971), the court held that films of a crime in progress are not impermissibly suggestive. Montellano also argues that another witness was exposed to an impermissibly suggestive photospread which contained only two out of six photographs depicting individuals of Mexican descent. Appellant has not asserted that the features of the non–Mexican individuals were so distinct from his as to single him out. Reasonable people can differ as to what makes a person appear to be Spanish, Mexican, Indian, Italian, or Iranian, or a member of any other national group possessing Mediteranean, Indian or Semitic features. We have augmented the record on appeal with the photospread, Government's Exhibit 15, and do not find it to be suggestive. Likewise, we reject appellant's unsupported argument that being the only individual to appear in both the photospread and the line–up violated his due process rights.

### Rule 12.1(b)

 Appellant argues that Balentine should not have been allowed to testify because the Government failed to notify him that her testimony would be used as required by Rule 12.1(b) of the Federal Rules of Criminal Procedure. This argument must fail. The exclusion of testimony of an undisclosed government witness is within the discretion of the trial court. *See* Fed.R.Crim.P. Rule 12.1(d) & (e). Appellant's counsel was present at the line–up four days before trial when Balentine first was able to identify Montellano. Appellant has failed to show that he suffered *prejudicial* surprise from the use of *unexpected* testimony. *See United States v. Myers*, 550 F.2d 1036, 1042 (5th Cir. 1977).

### Right to Counsel at Pretrial Line–up

Appellant was afforded substitute counsel at the December 26 line–up. *United States v. Wade*, 388 U.S. 218, 237 n.27, 87 S.Ct. 1926, 1938 n.27, 18 L.Ed.2d 1146 (1967). Identification testimony based upon that line–up was properly admitted.

### THE OUT–OF–COURT STATEMENT

 Testimony elicited by Portillo's counsel from Special Agent Paige revealed that Henry Sanchez, a witness who did not testify at trial, had identified Montellano as one of the robbers. Any harm done was substantially eased by a cautionary instruction. The trial court's refusal to strike the testimony if error, was harmless. *Fed.R. Crim.P.* Rule 52(a); *United States v. Kearney*, 560 F.2d 1358, 1364 (9th Cir.), *cert. denied*, 434 U.S. 971, 98 S.Ct. 522, 54 L.Ed.2d 460 (1977).

### RIGHT TO SELF–REPRESENTATION

 Appellant's contention that his right to self–representation was denied him due to the district court's unreasonable restrictions on research is without merit. Appellant had sufficient time to conduct his research prior to trial if he truly wanted to proceed *in pro per*. The denial of his mo-

tion for a continuance, made on the eve of trial, was within the sound discretion of the trial judge and will not be disturbed. *See United States v. Harris*, 501 F.2d 1, 4–5 (9th Cir. 1974).

*EFFECTIVE ASSISTANCE OF COUNSEL*

Appellant's statement through counsel on the day prior to trial that he was "not too pleased with what has happened thus far in the case, and he seems to believe that he could probably do at least as good a job as I am doing," does not show that appellant and his counsel were "embroiled in irreconcilable conflict." *Brown v. Craven*, 424 F.2d 1166, 1170 (9th Cir. 1970). Appellants's right to a fair trial was not prejudiced when the district court judge failed to inquire into appellant's dissatisfaction with counsel on the basis of the foregoing representation.

As discussed above, we find Montellano's contentions without merit. The judgment as to Daniel Chavez Montellano is AFFIRMED.

Due to the error in the admission of prior convictions, the judgment as to Paul Richard Portillo is REMANDED for proceedings in accordance with this Opinion.

SNEED, Circuit Judge (specially concurring):

I concur in the results reached by Judge Alarcon.

The existence of the equivalent of exigent circumstances justifies the opening of the trunk. The recovery of the weapons identified without opening the sacks raises no Fourth Amendment issue.

Our decision in *United States v. Cook*, 608 F.2d 1175 (9th Cir. 1979) (en banc), *cert. denied*, 444 U.S. 1034, 100 S.Ct. 706, 62 L.Ed.2d 670 (1980), provides no basis for collateral attack on convictions that became final prior to its date of filing. The purpose of *Cook* was to permit the issue of the use of prior convictions to impeach to be raised on appeal even though the defendant did not take the stand. No constitutional issue was involved.