UNITED STATES of America

v.

**Arthur GOSHORN.**

Crim. No. 79–215–N.

United States District Court,
D. Massachusetts.

March 6, 1981.

Judd Carhart, Asst. U. S. Atty., Boston, Mass., for plaintiff.

Nancy Gertner, Silverglate, Shapiro & Gertner, Boston, Mass., for defendant.

## MOTION TO SUPPRESS

NELSON, District Judge.

This is the second occasion on which I have considered the defendant's motion to suppress certain evidence obtained by agents of the Drug Enforcement Adminis-

tration (DEA) during a warrantless search of an automobile on May 21, 1979. I allowed that motion on October 26, 1979, relying, in part, on the doctrine of "automatic standing."[1] Subsequent to that decision, the United States Supreme Court abolished the doctrine of "automatic standing" in *United States v. Salvucci*, 448 U.S. 83, 100 S.Ct. 2547, 65 L.Ed.2d 619 (1980); *see also Rawlings v. Kentucky*, 448 U.S. 98, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1980). For this reason the Court of Appeals vacated my decision and remanded the defendant's motion for reconsideration in light of *Salvucci*. *United States v. Goshorn*, 628 F.2d 697 (1st Cir. 1980).

The *Salvucci* decision can best be understood in light of *Rakas v. Illinois*, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978). In *Rakas*, the Court dispensed with the rubric of standing in a case in which a criminal defendant objected to the admission of evidence seized during an allegedly illegal search. The Court held that the proper inquiry in such a case is whether the defendant's own Fourth Amendment rights have been violated. *Rakas*, 439 U.S. at 138–140, 99 S.Ct. at 427–429. And an illegal search only violates the Fourth Amendment rights of those who have a legitimate expectation of privacy in the area searched. *Rakas*, 439 U.S. at 143, 99 S.Ct. at 430. *United States v. Chadwick*, 433 U.S. 1, 7, 97 S.Ct. 2476, 2481, 53 L.Ed.2d 538 (1977); *Katz v. United States*, 389 U.S. 347, 353, 88 S.Ct. 507, 512, 19 L.Ed.2d 576 (1967). In *Salvucci*, the Court applied this approach to a case in which an essential element of the crime with which the defendant was charged was possession of the very item seized during the challenged search. Thus, after *Salvucci*, any defendant who moves to suppress evidence obtained by government agents during a warrantless search must show that he or she had a legitimate expectation of privacy in the area searched. *Salvucci*, 100 S.Ct. at 2553. Absent such a showing, the government may use the evi-

---

1. I found that Goshorn had "automatic standing" to challenge the legality of the search because he was charged with a possessory offense (possession of a controlled substance with intent to distribute, in violation of 21 U.S.C. § 841(a)(1)), an essential element of which was possession of a portion of the evidence seized.

dence at the defendant's trial, whether or not the search was justified by some exception to the warrant requirement. However, if the defendant is able to show that he or she had a legitimate expectation of privacy in the area searched, then the burden shifts to the government to show that the search was justified by one of the "few 'jealously and carefully drawn'" exceptions to the warrant requirement, *Arkansas v. Sanders*, 442 U.S. 753, 759, 99 S.Ct. 2586, 2590, 61 L.Ed.2d 235 (1979), quoting from *Jones v. United States*, 357 U.S. 493, 499, 78 S.Ct. 1253, 1257, 2 L.Ed.2d 1514 (1958).

The threshold question before me on this remand, therefore, is whether Goshorn has met his burden of showing that he had a legitimate expectation of privacy in the area searched by the DEA agents. To assist in resolving this question, I held an evidentiary hearing on December 8, 1980. The facts in this opinion are drawn both from that hearing and from the facts proven at the time of my original decision on the defendant's motion.

The area searched was a container found in the trunk of a Plymouth Valiant automobile and described in the DEA's "Report of Drug Property Collected, Purchased or Seized" as "[t]wo plastic bags, further in three brown paper bags, further in two clear plastic bags." For the reasons stated in this memorandum, I find that Goshorn did have a legitimate expectation of privacy in this container.

Goshorn and Donald Levine were arrested by DEA agents on May 21, 1979. During the course of the evening, the agents had observed Goshorn opening the trunk of the Valiant. After his arrest, Goshorn was searched by DEA agents, including Group Supervisor O'Connor. O'Connor found the keys to the Valiant in Goshorn's pocket, removed them, and handed them to Special Agent Keefe. Keefe then impounded the Valiant pursuant to 21 U.S.C. § 881(a)(4), searched the car, and made inventory of its contents. As part of this search, Keefe opened the locked trunk. Clothing, including shoes and coats, was scattered about in the trunk. Keefe found the container on the left side of the trunk. He removed it from the car, opened it, and discovered $950 in U.S. currency and a quantity of LSD pills. Until he opened the container, Keefe did not know what was inside.

The container itself was composed of five layers of bags. The two outermost layers were clear plastic bags. Inside these plastic bags were three layers of brown paper bags. Inside the container, SA Keefe found the money and two small clear plastic bags in which he found the LSD. The five layers were rolled or folded shut together forming a rectangular container a few inches high and five or six inches long.

Goshorn testified at the hearing that Levine had given him the container earlier in the evening and had asked Goshorn to look after it for him. Goshorn further testified that Levine also gave him the money, and that this money was a partial payment on a debt owed by Levine to Goshorn. Finally, Goshorn testified that he put the money in the container, rolled or folded the container shut and put it in the trunk of the Valiant because it was the most secure location then available to him.

Goshorn did not own the Valiant from which the container was taken. Instead, he testified that he had borrowed the car from a friend earlier in the evening. However, at the time of the search Goshorn was the only person with access to the Valiant. Moreover, there is no suggestion that the Valiant's owner was even aware of where her car was at the time of the search.

As noted earlier, the threshold question before me on this remand is whether Goshorn has met his burden of showing that he had a legitimate expectation of privacy in the container searched. Had the container been an ordinary piece of luggage, there would be no question but that Goshorn would have had such an expectation, for it is well-established that luggage is a common repository of personal property inevitably associated with an expectation of privacy. *Arkansas v. Sanders*, 442 U.S. 753, 762, 99 S.Ct. 2586, 2592 (1979); *United States v. Chadwick*, 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977). However, unlike the

more conventional forms of luggage considered by the Court in *Sanders* and *Chadwick*, containers composed of paper or plastic bags have not inevitably been associated with legitimate expectations of privacy.[2] Instead, in each case, all the circumstances must be considered to determine whether the defendant has established that he or she had a legitimate expectation of privacy in the container searched. *Arkansas v. Sanders, supra*, 442 U.S. at 764–765 n.13, 99 S.Ct. at 2593–2594. To demonstrate that he or she had such an expectation of privacy in the container searched, a defendant must show not only that he or she had a subjective expectation of privacy, but also that this expectation, viewed objectively, was reasonable. *Rakas v. Illinois*, 439 U.S. 128, 143–144 n.12, 99 S.Ct. 421, 430–431 (1978), quoting from *Katz v. United States*, 389 U.S. 347, 361, 88 S.Ct. 507, 516 (1967) (Harlan, J., concurring). I am persuaded that Goshorn has satisfied this burden.

At the time of the search, Goshorn had exclusive control of and access to the container. Levine gave the container to Goshorn for safekeeping. Goshorn then put money he claimed was his own into the container, rolled or folded the container shut, and put it into the locked trunk of an automobile to which only he had access. *See United States v. Dien*, 609 F.2d 1038, 1045 (2d Cir. 1979), *aff'd. on rehearing*, 615 F.2d 10 (2d Cir. 1980); *United States v. Lopez*, 474 F.Supp. 943, 946–947 (C.D.Cal. 1979). *See also Jones v. United States*, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960). *Contrast Rawlings v. Kentucky*, 448 U.S. 98, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1980), in which the defendant had put drugs into an acquaintance's purse. The defendant had neither possession of the purse nor the right to exclude others from examining it.

The Court held that, under those circumstances, the defendant could not challenge the legality of the warrantless search of the purse because he had no legitimate expectation of privacy in it. Similarly, in *United States v. Foskey*, 636 F.2d 517 (D.C.Cir. 1980), the court held that a defendant had no legitimate expectation of privacy in a paper bag which had been fastened to a gas pipe under the gas flap of an automobile because this was a place to which "anyone could have access," *Foskey* at 521. By contrast, Goshorn had exclusive access to the container and the ability to exclude all others from access to it.

Further, the container was multi-layered and rolled shut. Its contents were neither in plain view nor in any danger of spilling out. Because it was multi-layered, the container was not likely to "fall open or break very easily," *United States v. Ross*, No. 79–1624, slip op. at 14 (D.C.Cir. April 17, 1980), *rehearing en banc granted* (June 26, 1980), unlike the single bag containers considered by the courts in *United States v. Brown*, 635 F.2d 1207 (6th Cir. 1980); *United States v. Portillo*, 633 F.2d 1313 (9th Cir. 1980); *United States v. Mackey*, 626 F.2d 684 (9th Cir. 1980); *United States v. Jimenez*, 626 F.2d 39 (7th Cir. 1980); *United States v. Ross, supra*; *United States v. Torres*, 504 F.Supp. 864 (E.D.Cal.1980). In fact, the container was no less difficult to open than the unlocked suitcase considered by the Court in *Arkansas v. Sanders, supra*, 442 U.S. at 762–763 n.9, 99 S.Ct. at 2592–2593 n.9.

Moreover, the container successfully hid its contents from view, a point amply demonstrated by the fact that Keefe was unable to ascertain the contents of the container until he opened it. *See United States v. Rivera*, 486 F.Supp. 1025, 1032–

---

**2.** This question has been the subject of much litigation in the federal courts since *Arkansas v. Sanders, supra*, was decided. For example, I am aware of approximately 20 such decisions in 1980 alone. Interestingly, many of the courts in these cases relied heavily on *United States v. Ross*, No. 79–1624, slip op. (D.C.Cir. April 17, 1980), *rehearing en banc granted* (June 26, 1980). And the question on the rehearing is "whether there is a reasonable expectation of privacy in an ordinary paper bag carried in a car." *United States v. Foskey*, 636 F.2d 517 at 520 n.2 (D.C.Cir.1980). Moreover, the United States Supreme Court has granted certiorari in a case involving marijuana bricks wrapped in plastic. *Robbins v. California*, 103 Cal.App.3d 34, 162 Cal.Rptr. 780 (1980), *cert. granted*, —— U.S. ——, 101 S.Ct. 916, 66 L.Ed.2d 838 (1981).

1033 (N.D.Tex.1980) (plastic bags). For this reason, Goshorn's expectation of privacy in the container was significantly greater than that of a defendant whose container reveals its contents by its shape or feel. *See Robbins v. California*, 103 Cal.App.3d 34, 162 Cal.Rptr. 780 (1980), *cert. granted*, —— U.S. ——, 101 S.Ct. 916, 66 L.Ed.2d 838 (1981); *United States v. Portillo, supra*, 633 F.2d at 1320; *United States v. Mannino*, 635 F.2d 110 (2d Cir. 1980). *See also Arkansas v. Sanders, supra*, 442 U.S. at 764–765 n.13, 99 S.Ct. at 2593–2594.

Finally, the fact that Keefe found the container in a trunk which also contained loose clothing suggested that the container had been "pressed into service as a repository for [Goshorn's] personal effects." *United States v. Ross, supra*, at —— n.6. Therefore, even if a container made of paper · and plastic bags is not invariably viewed as a repository for one's personal effects, the circumstances apparent to Keefe at the time of this search indicated that Goshorn might be using the container for this purpose.

In view of the foregoing, I conclude that Goshorn has established that he had a legitimate expectation of privacy in the container at the time of the search. As in my original decision, I reject the government's further argument that the search was nonetheless justified as an inventory pursuant to *South Dakota v. Opperman*, 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976). *See United States v. Ocampo*, 492 F.Supp. 1211, 1234 (E.D.N.Y.1980); *United States v. Hill*, 458 F.Supp. 31 (D.D.C.1978); *United States v. Vallieres*, 443 F.Supp. 186, 191 (D.Conn. 1977); *United States v. Cooper*, 428 F.Supp. 652, 654 (S.D.Ohio 1977).[3] Since Goshorn had a legitimate expectation of privacy in the container searched, and since the search was conducted without a warrant and does not fall within an exception to the warrant requirement, Goshorn's motion to suppress is allowed.

**3.** However, I have not reconsidered this issue in this memorandum since this aspect of my original decision was neither affected by *United States v. Salvucci, supra*, nor addressed by the

Court of Appeals in this case. Moreover, the government has not pointed to any new case law which alters my view.