**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Osborne MACKEY, Defendant-Appellant.**

**No. 79–1586.**

United States Court of Appeals,
Ninth Circuit.

Aug. 18, 1980.

Robert L. Corbin, Los Angeles, Cal., for defendant-appellant.

Frederick A. Jacobsen, Los Angeles, Cal., for plaintiff-appellee.

Before WALLACE and TANG, Circuit Judges, and HANSON,* District Judge.

WALLACE, Circuit Judge:

Mackey was convicted of aiding and abetting the commission of an armed bank robbery pursuant to 18 U.S.C. § 2113. He asserts that the district court erred in refusing to suppress evidence obtained in the search of the automobile which Mackey drove away from the scene of the robbery. Specifically, he contends that (1) the warrantless search of the automobile at the scene of his apprehension was not justified by the "automobile exception" to the warrant requirement; and (2) even if the automobile search was justified, the warrantless search of the contents of a paper bag found within the car constituted an invasion of Mackey's Fourth Amendment rights pursuant to the rule announced in *Arkansas v. Sanders,* 442 U.S. 753, 99 S.Ct. 2586, 61

---

* Honorable William C. Hanson, United States District Judge, Southern District of Iowa, sitting by designation.

L.Ed.2d 235 (1979). We reject his claims and affirm the conviction.

On April 26, 1979, Mackey's codefendant, Tyson, entered a Los Angeles Security Pacific Bank and robbed a teller at gunpoint. He then fled on foot to a car in which Mackey was waiting. As Mackey drove away, he turned the wrong way onto a one-way street and was forced to turn around, thereby enabling a witness to write down the license number of the vehicle. Police broadcasts of the license number led to the apprehension of Mackey and Tyson some distance from the scene of the crime.

After arresting both defendants, police conducted an immediate search of the automobile. They found a paper bag beneath the front seat on the passenger's side, which contained a hand gun and all the money taken in the robbery. After the arrest and search, the car was impounded for the purpose of inspecting it further in connection with the investigation of the case.

## I.

■ We first address Mackey's contention that the post-arrest search of the vehicle was not justified by the automobile exception to the general requirement that police obtain a warrant prior to conducting a search. In *Chambers v. Maroney*, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970), the vehicle in which defendants were riding was stopped and the defendants were arrested for armed robbery on the basis of eye witness descriptions of them and their automobile. After their arrest, defendants' car was driven to the police station where police conducted searches of its contents both before and after interrogation. *Id.* at 63, 90 S.Ct. at 1987 n.8, 90 S.Ct. at 1987. (Harlan, J., concurring and dissenting). Incriminating evidence was found during the second search.

The Supreme Court upheld the legality of the searches, relying on its prior holdings that a search warrant is unnecessary where there is probable cause to search an automobile stopped on the highway and there is

thus the danger that the car will be moved. *Id.* at 51, 90 S.Ct. at 1981 (majority opinion), *citing Carroll v. United States*, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925). The Court did not require the police to hold the vehicle until a search warrant could be obtained, even though the defendants had been arrested and the car secured. The Court refused to establish a constitutional distinction between the immediate search of a vehicle and the holding of a car until a warrant can be obtained, reasoning that it would not always be clear which was the greater intrusion. *Id.* at 51–52, 90 S.Ct. at 1981. Finally, the Court found that the exigency presented by the car's mobility persisted even at the police station "unless the Fourth Amendment permits a warrantless seizure of the car and the denial of its use to anyone until a warrant is secured." *Id.* at 52, 90 S.Ct. at 1981.

Mackey contends that *Chambers* does not eliminate the exigency requirement that there be some actual potential for the automobile to be moved before the warrant requirement is waived. *See Arkansas v. Sanders, supra*, 99 S.Ct. 2591 n.7; *Coolidge v. New Hampshire*, 403 U.S. 443, 461 n.18, 91 S.Ct. 2022, 2035 n.18, 29 L.Ed.2d 564 (1971). Mackey reads *Chambers* as stating that the police there did not intend to seize exclusive control of the car, but merely moved it to the street outside the police station to conduct the search. Thus, he argues, the possibility that some person might rightfully demand the use of the car was still present, and, therefore, so was the dilemma between holding the car and conducting an immediate search.

By contrast, Mackey views the police here as having taken complete and exclusive possession of the car at the time of the arrest, apparently on the assumption that the police had, at that point, decided to impound the car for further investigation. By Mackey's analysis, the crucial distinction between this case and *Chambers* is the police decision to impound the car.[1] Mackey appar-

---

1. Mackey also stresses that the search occurred after both suspects were arrested and

removed from the automobile, and that police had no reason to believe that any accomplices

ently views impoundment as a more significant and complete exercise of control than merely moving the car to the police station to conduct a search. In effect, he asks us to treat the decision to impound as an election to seize and hold the car rather than to search it without a warrant. Since the police had already seized exclusive control of the car prior to the search, Mackey argues that the potential exigency that was still present in *Chambers* was gone here, and so was the crucial dilemma between holding and searching the car. The search was, according to this view, unwarranted.

While we are doubtful that Mackey's analysis is valid,[2] we need not reach that question. Nothing in the record of this case supports Mackey's theory for distinguishing *Chambers*. There is no evidence that the police had decided to impound the car at the time of the arrest and search. Indeed, the district judge found that the car was impounded after the arrest and search. Mackey has suggested no reason to disturb that finding and has directed us to no other evidence in the record that would suggest that the police intended all along to impound the car. The mere fact that the police actually impounded the car for further investigation does not take this case outside the reach of *Chambers*. Therefore, we conclude that the search of the car was legal.

## II.

The second issue concerns the scope of the Supreme Court's recent holding in *Arkansas v. Sanders, supra*, 442 U.S. 753, 99 S.Ct. 2586, 61 L.Ed.2d 235. In *Sanders*, the Court held that the automobile exception of *Chambers* does not authorize the warrantless search of a suitcase seized from the trunk of a car. *United States v. Chadwick*, 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977), rather than *Chambers*, was found to be controlling.

In requiring that the police obtain a warrant, *Chadwick* and *Sanders* both stressed that "a person's expectations of privacy in personal luggage are substantially greater than in an automobile." *United States v. Chadwick, supra*, 433 U.S. at 13, 97 S.Ct. at 2484; *see Arkansas v. Sanders, supra*, 99 S.Ct. at 2592. Mackey argues that the touchstone of the Court's analysis in *Sanders* is that luggage "is a common repository for one's personal effects, and therefore is inevitably associated with the expectation of privacy." *Id.* He contends that a paper bag is also a common repository of personal effects. The government, on the other hand, argues that the *Sanders* holding is limited to luggage and observes that a paper bag is simply not luggage.

Although the government is correct that the *Sanders* holding concerned only luggage, we cannot say that its rationale does not extend to other kinds of containers. *See, e.g., United States v. Dien*, 609 F.2d 1038 (2d Cir. 1979) (sealed cartons); *United States v. Bella*, 605 F.2d 160 (5th Cir. 1979) (guitar case); *United States v. Calandrella*, 605 F.2d 236 (6th Cir.), *cert. denied*, 444 U.S. 991, 100 S.Ct. 522, 62 L.Ed.2d 420 (1979) (briefcase); *United States v. Meier*, 602 F.2d 253 (10th Cir.

---

were at large who might remove or destroy relevant evidence. But *Chambers* cannot be distinguished on either of these points.

**2.** Not only has Mackey understated the degree of possession and control exercised by the police in *Chambers v. Maroney*, 399 U.S. 42, 63 n.8, 90 S.Ct. 1975, 1987 n.8, 26 L.Ed.2d 419 (1970) (Harlan, J., concurring and dissenting), but the Court has subsequently made it clear that *Chambers* was formulated as a practical rule that does not draw fine distinctions among searches conducted after a car is stopped on a street or highway. *See Arkansas v. Sanders*, 99 S.Ct. 2586, 2593 n.10, 2594 n.14 (1979); *United States v. Chadwick*, 433 U.S. 1, 12, 13

n.7, 97 S.Ct. 2476, 2484 n.7, 53 L.Ed.2d 538 (1977); *Texas v. White*, 423 U.S. 67, 96 S.Ct. 304, 46 L.Ed.2d 209 (1975) (per curiam); *Cady v. Dombrowski*, 413 U.S. 433, 441–42, 93 S.Ct. 2523, 2528, 37 L.Ed.2d 706 (1973); *Coolidge v. New Hampshire*, 403 U.S. 443, 463 n.20, 91 S.Ct. 2022, 2036 n.20, 29 L.Ed.2d 564 (1971); *cf. Cardwell v. Lewis*, 417 U.S. 583, 94 S.Ct. 2464, 41 L.Ed.2d 325 (1974) (plurality opinion upholding automobile search at impoundment lot the day following arrest). We need not address whether there is an ultimate limit to the reach of *Chambers* in cases in which police have probable cause to search an automobile they have stopped on the open road.

1979) (backpack). At the same time, we think it extends *Sanders* beyond reason to assume that it necessarily applies to every package or container that might conceivably be used to carry personal effects. Both the majority and dissenting opinions acknowledged that not all containers and packages found by the police will require the full protection of the Fourth Amendment warrant requirement, and both admitted that determining which ones should receive such protection would involve a difficult line-drawing process. 99 S.Ct. at 2593 n.13; *id.* at 2595 (Blackmun, J., dissenting). In our view, the key to the Court's analysis in *Sanders* is that luggage implicates substantial privacy interests that should receive independent protection, apart from the defendant's right to exercise control over his personal property. *See id.* at 2592–93. We thus agree with the Tenth Circuit that "[t]he focus in all such cases is on the party's reasonable expectation of privacy in a particular item, a concept which has been elaborated on in the case law. *See e.g., Rakas v. Illinois,* 439 U.S. 128 [, 99 S.Ct. 421, 58 L.Ed.2d 387] . . . (1978); *Katz v. United States,* 389 U.S. 347 [, 88 S.Ct. 507, 19 L.Ed.2d 576] . . . (1967)." *United States v. Gooch,* 603 F.2d 122, 126–27 (10th Cir. 1979) (footnote omitted). *Accord, United States v. Ross,* No. 79–1624 (D.C.Cir., April 17, 1980).

In this case, the police, pursuant to *Chambers,* had the right to seize the bag as they would any item in the car. Once seized, and assuming Mackey had a possessory interest in the bag, the question we must answer is whether Mackey's privacy interest was sufficient to require a warrant before the bag was searched. The district court here found that it would be unreasonable to require the police to obtain a warrant before searching the paper bag "in light of the circumstances in this case." [3] While the case law provides virtually no guidance as to whether a district court's initial determination of this issue is subject to review by us *de novo* as a pure ruling of law, or under a clearly erroneous standard,[4] we think the district court's finding is sustainable under either standard of review.[5] After carefully reviewing the facts of this case, we conclude that Mackey did not possess a sufficient privacy interest in the paper bag to justify imposing the warrant requirement of *Chadwick* and *Sanders.*

A paper bag is among the least private of containers. It is easily torn, it cannot be latched, and, to a greater extent than most containers, its contents can frequently be discerned merely by holding or feeling the container. Perhaps largely because of these qualities, a paper bag stuffed under the seat of the car is naturally viewed as an item demanding and deserving no more privacy than any other part of the automobile.

3. Although the suppression hearing in this case was held after the decision in *Arkansas v. Sanders, supra,* 99 S.Ct. 2586, there is no specific indication in the record that the district judge relied on *Sanders* or applied the expectation of privacy standard.

4. The reasonable expectation of privacy standard is composed of a subjective and objective aspect, including whether the defendant demonstrated that he in fact held an expectation of privacy and whether society is prepared to recognize that expectation as reasonable. *See Katz v. United States,* 389 U.S. 347, 360–62, 88 S.Ct. 507, 516–17, 19 L.Ed.2d 576 (1967) (Harlan, J., concurring); *United States v. Ross,* No. 76–1624 (D.C.Cir., April 17, 1980). Although it is essentially a legal standard, its application involves the finding of facts and application of the legal standard to those facts. We have held that the initial application of similar legal standards is the province

of the trier of fact, subject only to our review to ensure that the ultimate finding is not clearly erroneous. *See, e.g., United States v. Cortez,* 595 F.2d 505, 507 (9th Cir. 1979), *cert. granted,* — U.S. —, 100 S.Ct. 2983, 64 L.Ed.2d 852 (1979) (founded suspicion); *United States v. Flickinger,* 573 F.2d 1349, 1356–57 (9th Cir. 1978), *cert. denied,* 439 U.S. 836, 99 S.Ct. 119, 58 L.Ed.2d 132 (1979) (exigency justifying warrantless entry); *Costello v. United States,* 324 F.2d 260, 261 (9th Cir. 1963) (probable cause). We need not decide in this case whether the particular question posed here is subject to a *de novo* or a clearly erroneous standard of review.

5. Contrary to Judge Tang's assertion in his dissent, we have not addressed the issue of which party has the burden of proof as to whether defendant's privacy interest in a particular item of personal property justifies imposition of the warrant requirement.

On facts similar to these, the District of Columbia Circuit recently concluded that the defendant "could not reasonably harbor an expectation of privacy in his paper bag beyond that existing due to actual possession . . . . " *United States v. Ross, supra*, at ——; *see* 2 W. LaFave, Search and Seizure § 5.5, at 365 (1978); *id.* § 5.5 (Supp. 1980). We agree with the analysis in *Ross*, which refused to view the search of the paper bag as distinguishable from the clearly justified seizure of it. We conclude that the search of the paper bag was legal.

AFFIRMED.

TANG, Circuit Judge, dissenting:

I dissent. In Part II of the majority opinion, Judge Wallace upholds the warrantless search of the paper bag on the ground that Mackey did not have a "reasonable expectation of privacy" in such a bag. The majority's analysis in reaching that result inverts what is the correct analytic approach to this issue. Implicit in the majority's analysis is the presumption that the burden is on Mackey to show a reasonable expectation of privacy entitling him to the Fourth Amendment's protection of a search warrant, as though he had to show that the police needed a search warrant rather than the government's having to show a warrant was not required. For further elucidation of the reasons for my dissent, see Judge Bazelon's excellent dissenting opinion in *United States v. Ross*, No. 79–1624 (D.C. Cir. April 17, 1980).

Normally searches of private property must be performed pursuant to a search warrant. *Arkansas v. Sanders*, 442 U.S. 753, 758, 99 S.Ct. 2586, 2590, 61 L.Ed.2d 235 (1979). Searches conducted without a warrant "are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967). Each of these exceptions is carefully drawn and is to be strictly construed. The burden is on those seeking the exemption to show the need for it.

One might claim that the search of the bag was part of the search of the car and so was within the automobile exception. But this is erroneous. *See Arkansas v. Sanders*, 442 U.S. at 765 n.13, 99 S.Ct. at 2593 n.13 (applicability of warrant requirement to searches of containers does not depend on whether they are seized from automobiles). And, in any event, the burden still is on the government to show that such a container search would be within the automobile exception. *Cf. Arkansas v. Sanders*, 442 U.S. at 763, 99 S.Ct. at 2593.

Since the search was not an automobile exception search, the person is protected by the warrant requirement of the Fourth Amendment unless another exception is clearly shown to be applicable. The burden is on the government to show an exception to the warrant requirement; it is not on the person to show an entitlement to the protection of the warrant requirement.

The majority opinion today and the district judge below places on Mackey the burden of showing he had a reasonable expectation of privacy in the bag and so deserved the warrant safeguard. But the burden should have been on the government. Here the government barely presented any justification for excepting this search from the warrant requirement, let alone carried its burden. It merely argued that *Arkansas v. Sanders* applies only to luggage. As even the majority states, that argument is incorrect. If this is to be a new exception, the government presented neither evidence nor argument about what compelling societal reasons justify this new exception. The applicability of other existing exceptions is doubtful. Mackey and his co-defendant had been arrested before the closed bag was discovered and seized. Thus there was no danger of evidence being lost. The government does not argue this was a search incident to a lawful arrest. Nor were the contents of the bag in plain view. The container was not of a type whose outward appearance reveals its contents.

The government does not contest Mackey's standing to challenge the warrantless search of his own personal property, although from all the discussion of "reasona-

ble expectation of privacy" one might think that standing was the issue here.

The majority's analysis effectively reads *Arkansas v. Sanders* as creating, as it were, a "container exception" to the automobile exception. That is, warrantless searches of automobiles is the antecedent condition into which the Supreme Court has interjected a container exception: for searching containers a warrant is required. But since this is an "exception," the burden is on the one claiming it to show the particular container involved is within the exception. This reasoning is erroneous. *Arkansas v. Sanders* takes searches of containers out of the automobile exception. Under that case, warrantless searches of containers—however humble—must be justified by those seeking to uphold the search.

The majority opinion today and the district court below in ruling on the suppression motion does not allocate the burden correctly between Mackey and the government. Since this flaw substantially affected the suppression ruling and since the use of the evidence at trial was not harmless error, I would reverse and remand for a new suppression hearing and trial.