**GOVERNMENT OF the VIRGIN ISLANDS, Appellant,**

v.

**RASOOL, Abiff Hiram, Appellee.**

**No. 81–1267.**

United States Court of Appeals, Third Circuit.

Argued April 28, 1981.

Decided Aug. 19, 1981.

As Amended Aug. 27, 1981.

Rehearing and Rehearing In Banc Denied Dec. 17, 1981.

---

Hugh P. Mabe, Asst. U.S. Atty., Charlotte Amalie, St. Thomas, V. I., Ishmael A. Meyers, U.S. Atty., District of the Virgin

**584**

Islands, Charlotte Amalie, V.I., John F. De Pue, Atty., U.S. Dept. of Justice, Washington, D.C. (argued), for appellant.

Maria Tankenson Hodge, Charlotte Amalie, St. Thomas, V.I. (argued), for appellee.

Before ADAMS, WEIS and GARTH, Circuit Judges.

## OPINION OF THE COURT

GARTH, Circuit Judge.

This is an appeal from an order of the District Court of the Virgin Islands suppressing evidence which the police found in a car driven by the defendant, Hiram Rasool Abiff ("Abiff"). In particular, the district court's order suppressed as evidence a revolver which was in a brown paper grocery bag found on the back seat of the vehicle.

On June 18, 1980, Abiff was charged by information with assisting an escaped prisoner in violation of 14 V.I.C. §§ 661(1) and 12; possessing and carrying a revolver in violation of 14 V.I.C. § 2253(a); and possessing stolen property (the revolver) in violation of 14 V.I.C. § 2101(a). Abiff filed a motion to suppress the revolver, claiming that it was the product of an unconstitutional search and seizure. After conducting a hearing to determine the admissibility of the revolver the court concluded that the seizure of the revolver could not be justified on the basis of a search incident to an arrest or a warrantless search of a motor vehicle based on probable cause and exigent circumstances. Thus, the court suppressed the evidence. We reverse.[1]

### I.

On the night of May 29, 1980, Police Officer Barbara Heyliger, while on her way to work, observed a red Honda Civic automobile that was the subject of a police watch bulletin. She noted that the car was driven by a male and that another individual was occupying the front passenger seat. Heyliger also claimed that Stafford Todman was seated in the rear of the vehicle. Todman was wanted for escaping from prison while awaiting trial for attempted murder and was known to be armed and dangerous. Upon arriving at Police Headquarters, Heyliger reported that she had seen Todman and detailed the description and location of the car in which he was observed. The desk officer broadcast the vehicle's description and license number to all units, and dispatched police to the vicinity where Heyliger spotted the car. When the police arrived at the stated location, they were unable to locate the vehicle described in the dispatch.

Later that evening, two police officers located the Honda vehicle parked at the side of a dirt road behind the Wheatley Shopping Center. Officer Allen and another officer drove to the site, and left their vehicle as other police units proceeded toward the area. The two officers approached the Honda from the rear, and noticed that only two persons were inside the car. They asked both occupants to leave the car.

Officer Allen testified that the individual sitting in the front passenger seat was a female. He stated that it was only after both occupants had left the Honda that he was able to observe the male driver, whom he assumed was Todman. Allen then requested the female to move away from the car door so that he could search the vehicle in order to see whether anybody else was in it. While removing his flashlight, he took another step toward the car and began to smell the heavy scent of gun-cleaning solvent and gun powder. He then directed his flashlight on the floor of the passenger side, where he found a pan, rags, gun barrel cleaning brushes, and pistol ammunition. He reached in the vehicle, removed the pan and handed it to another officer. At some

---

1. Jurisdiction in this appeal is predicated on 18 U.S.C. § 3731, which provides, in pertinent part:

    An appeal by the United States shall be to a Court of Appeals from a decision or order of a district courts [sic] suppressing or excluding evidence ... in a criminal proceeding, not made after the defendant has been put in jeopardy and before the verdict or finding on an indictment or information....

point prior to removing the pan, Allen overheard another officer saying that the man who had been in the car was not Todman.

Allen proceeded to look underneath the passenger seat to see if there was anything else under it. He spotted a red and white plastic bag that was protruding from under the driver's side, but did not pick it up since it was on the other side of the vehicle. As he pulled his head out of the vehicle, he noticed a brown paper shopping bag on the back seat directly behind the driver's seat. Allen then began to search for the lever to fold the passenger seat over so that he could gain access to the paper bag. At this point, the driver, who had come over to the passenger side of the vehicle, placed his hand on Allen's shoulder, protesting the search. According to Allen, Abiff was using abusive language and stated that he was a farmer selling fruit in the market, that there was nothing of interest in the back seat of the car and that Allen would need a search warrant to continue searching. Allen shoved Abiff away from him and ordered that he be handcuffed. At that point, Allen informed Abiff that he was already under arrest for harboring an escaped felon. Abiff, after being handcuffed, remained in the vicinity of Allen, although Allen did not know his exact position at that time. Allen then located the lever and the passenger seat fell forward. He then seized the grocery bag, emptied its contents, and discovered some clothing and the revolver.

Allen also testified that at first, he checked the vehicle to make sure that no one was hiding in it and, since he initially assumed that they had apprehended Todman, he was also searching for a gun. As a result of the discovery of the pistol, he placed Abiff under arrest for possessing and carrying an unlicensed firearm. The female passenger was removed from the scene by detectives, but apparently she was not arrested. Later, when the Honda was taken to the police station, the police discovered in the car shotgun shells, pistol ammunition, a ski mask, and some stolen property.

Based on the foregoing evidence, the district court concluded that the revolver should be suppressed. The court remarked that because Abiff had been handcuffed and moved away from the car, seizure of the pistol could not be justified on the basis of a search incident to an arrest. The court also concluded that the government's reliance on the warrantless automobile search exception must also fail due to a lack of exigent circumstances. This appeal by the government followed.

## II.

As a preliminary matter, we must address two questions never resolved by the district court: whether the police had probable cause to arrest Abiff; and whether the police had probable cause to search the *vehicle* as distinct from any *container* found within the vehicle. Although the court did not deal with either of these questions directly, it observed in a footnote:

> The Court questions whether Allen ever had the right to conduct a search of the vehicle. However, the Court will refrain from addressing the issue because it is superfluous to this opinion.

District Court Memorandum, App. at 188 n.2.

Normally we would remand to the district court for its initial ruling of probable cause regarding both the search of the vehicle and Abiff's arrest, but we believe that the record in the instant case is sufficient for this determination to be made by this Court. *See United States v. Belle*, 593 F.2d 487, 497 (3d Cir.) (en banc), *cert. denied*, 442 U.S. 911, 99 S.Ct. 2825, 61 L.Ed.2d 277 (1979).

The district court judge did not make findings as to the probable cause to arrest Abiff. His opinion deals solely with a search incident to an arrest, and concludes that the search was unconstitutional because "once Abiff was handcuffed and no longer in close proximity to the vehicle, the justification for the search ceased." Opinion of the District Court, App. at 188. Thus, the district court apparently assumed that a valid arrest had been made.

Although the record is confused as to the circumstances of Abiff's arrest we are satisfied that probable cause existed for Officer Allen to arrest Abiff, and that he did so, prior to the search of the Honda during which the revolver was found. Allen's arrest report, which is in evidence, and his testimony at the hearing, reveal that Allen had been a member of one of the police units which had been looking for the red Honda in which Stafford Todman had been seen. Upon locating the Honda, Allen initially thought that the male occupant was Todman. He testified, however, that within a short time he overheard another officer say that Todman was not one of the car's occupants.

Allen, who had required the occupants of the vehicle to leave the car and place their hands on the roof of the Honda, then testified that he smelled gun powder and gun cleaning solution. When he looked into the car, he saw gun cleaning brushes, a pan and rags. At this point, having seen a grocery bag on the back seat of the Honda, Allen sought to remove the bag. Abiff intercepted him then, saying: "Do not go in my car, there's nothing back there ... I'm a farmer, I sell fruits in the market."

Allen's arrest report indicates that Allen then advised him that he was already under arrest for rescuing an escaped felon, a charge which Allen claims Abiff did not deny. Allen claims that Detective Christian, who had also arrived on the scene, had already advised Abiff of his rights.[2] Abiff, who continued protesting and even attempted to push Allen away from the car, was then handcuffed on Allen's orders. It was then that Allen overturned the grocery bag. The revolver thereupon fell out.

The testimony, disclosing these actions, is somewhat confused. Allen was of the impression that Christian had arrested Abiff prior to the time that Allen had handcuffed Abiff. Christian, however, denied arresting Abiff, stating that Allen had placed him under arrest. Whether Abiff's arrest came about through a collective effort, or through an erroneous impression which Allen had received, is immaterial. We are satisfied that whatever the reason, the circumstances which we have recounted gave Allen sufficient probable cause to arrest Abiff, and he did so prior to the discovery of the revolver.

These same circumstances suffice, in our opinion, to justify the search of the automobile, even without a valid arrest. The "automobile exception" to the warrant requirement permits the police to search an automobile without a warrant when the police have probable cause to believe that the vehicle contains contraband or evidence of a crime, and when circumstances are such that it is impractical to obtain a warrant. *See, e. g., Chambers v. Maroney*, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); *Carroll v. United States*, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925). The fact that a defendant may have been handcuffed and removed from the immediate area prior to the search is immaterial. *See Chambers, supra; United States v. Mannino*, 635 F.2d 110, 114–15 (2d Cir. 1980); *United States v. Mackey*, 626 F.2d 684, 685–86 (9th Cir. 1980).

In our judgment, the overriding consideration with respect to the existence of probable cause to search the vehicle was Todman's suspected presence in the Honda. This factor, in and of itself, provided a sufficient basis for probable cause to search the vehicle. In combination with the suspicion of Todman's presence, the odor of gunpowder and gun cleaning solvent which Allen immediately detected, and the plain visibility of the gun cleaning implements and pistol ammunition, gave ample cause to believe that a handgun might have been concealed somewhere in the vehicle, or that the vehicle might contain evidence which would lead to Todman's whereabouts.

**2.** Christian testified that Abiff had been put under arrest by Allen and that he, Christian, had advised Abiff of his rights. App. at 7. Christian also testified that while he was looking in the bushes for Todman he had said to a colleague: "Why are we all here? You already got the man under arrest; put him in the car and bring him down to the station." App. at 97.

Based on these circumstances, then, the police clearly had probable cause to believe either that Todman was hiding in the vehicle or that the car contained a weapon or evidence pertaining to Todman. Thus, we conclude that the search of the vehicle itself comes within the scope of the *Carroll-Chambers* doctrine, which would permit the search of the Honda without a warrant.

We therefore turn to the question whether the grocery bag found on the rear seat of the car could be searched without a warrant, even though the Honda was properly subjected to a warrantless search.

### III.

At the time the district court was faced with the problem which now confronts us, the Supreme Court had yet to decide either *New York v. Belton*, —— U.S. ——, 101 S.Ct. 2860, 69 L.Ed.2d —— (1981), or *Robbins v. California*, —— U.S. ——, 101 S.Ct. 2841, 69 L.Ed.2d 744 (1981), both of which were filed on July 1, 1981. Thus, the district court did not have the benefit of the Supreme Court's most recent pronouncements regarding automobile and container searches.

In *Belton, supra,* a policeman stopped a speeding vehicle. Belton was one of the car's four occupants. While making routine inquiries with respect to the automobile registration, the officer smelled burnt marihuana and saw, on the floor of the car, an envelope marked "Supergold". He associated that marking with marihuana. At that point, all four of the occupants were placed under arrest for the unlawful possession of marihuana. After searching each of the car's occupants, the officer then searched the passenger compartment of the car. On the back seat of the vehicle, he found a leather jacket, which belonged to Belton. Unzipping one of its pockets, he discovered cocaine.

Belton was indicted for possession of a controlled substance. He moved to suppress the cocaine that the police officer had removed from his jacket pocket. When that motion was denied, Belton pleaded guilty to a lesser included offense, but in doing so, he preserved his claim that the cocaine had been illegally seized in violation of the Fourth and Fourteenth Amendments. The trial court's denial of the suppression motion was affirmed by the Appellate Division of the New York Supreme Court, which reasoned: "[o]nce defendant was validly arrested for possession of marihuana, the officer was justified in searching the immediate area for other contraband." *People v. Belton*, 68 App.Div.2d 198, 201, 416 N.Y.S.2d 922 (1979). The New York Court of Appeals reversed, observing that since there was no danger that Belton could gain access to the jacket which was in the possession of the police officer, a warrantless search of the zippered pocket was unconstitutional as a search incident to a lawful arrest.

The United States Supreme Court, in turn, reversed this latter holding, thus reinstating Belton's conviction. In doing so, it re-examined its prior opinion in *Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969), which had emphasized that the scope of a search must be strictly tied to and justified by the circumstances which rendered its initiation permissible. In *Belton*, the Supreme Court held that "when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile." —— U.S. at ——, 101 S.Ct. at 2864 (footnotes omitted). That holding was characterized as doing "no more than determin[ing] the meaning of *Chimel's* principles in this particular and problematic content. It in no way alters the fundamental principles established in . . . *Chimel*. . . ." *Id.* at —— n.3, 101 S.Ct. at 2864 n.3.

The Court went on to state that since police may search the passenger compartment of an automobile after a lawful arrest, they could also examine the contents of any containers found within the passenger compartment, "for if the passenger compartment is within reach of the arrestee, so also will containers in it be within his reach." *Id.* at ——, 101 S.Ct. at 2864

(footnote omitted). The Court thereupon described a "container" as "any object capable of holding another object." It specifically included within this description, "closed or open glove compartments, consoles, or other receptacles located anywhere within the passenger compartment, as well as luggage, boxes, bags, clothing, and the like." The Court then observed: "Our holding encompasses only the interior of the passenger compartment of an automobile and does not encompass the trunk." *Id.* at —— n.4, 101 S.Ct. at 2864 n.4.

The Court articulated its rationale[3] for the search of a container found within the passenger compartment of an automobile as follows:

> Such a container may, of course, be searched whether it is open or closed, since the justification for the search is not that the arrestee has no privacy interest in the container, but that the lawful custodial arrest justifies the infringement of any privacy interest the arrestee may have. Thus, while the Court in *Chimel* held that the police could not search all the drawers in an arrestee's house simply because the police had arrested him at home, the Court noted that drawers within an arrestee's reach could be searched because of the danger their contents might pose to the police. *Chimel v. California, supra*, 395 U.S. at 763, 89 S.Ct. at 2040.

*Id.* —— U.S. at ——, 101 S.Ct. at 2864.

Having described the contours and rationale of *Belton*, the Court then held that since Belton had been lawfully arrested, his jacket, which was within the passenger compartment of the car, justifiably could be searched without a search warrant. This disposition, therefore, obviated the need for the Court to consider whether the search was permissible under the "automobile exception" doctrine of *Carroll-Chambers. Id.* at —— n.6, 101 S.Ct. at 2865 n.6.

The parallel between Belton's search, which the Supreme Court upheld, and the search made in the instant case by Officer Allen, is unmistakable. As we have previously discussed, Abiff was under arrest prior to Allen's search of the passenger compartment of the Honda. *See* discussion in Part II, *supra.* In that search, Allen emptied the contents of the grocery bag found on the back seat of the Honda and thus discovered the revolver. Having satisfied ourselves as to the validity of Abiff's arrest, we are equally satisfied with respect to the validity of the search that followed his arrest. We observed that the search of the grocery bag followed immediately after Abiff's arrest, just as the search of Belton's jacket "followed immediately upon that arrest." *Belton, supra*, —— U.S. at ——, 101 S.Ct. at 2865. Indeed, we could possibly foresee an increased expectation of privacy with regard to items that might be contained in the zippered pocket of a jacket. If such is the case, the unzipping of Belton's jacket pocket would give more cause for Fourth Amendment concern than the search of a grocery bag. Nevertheless, since the *Belton* jacket search has been held lawful, there can be no doubt but that the same result must follow in this case. A

---

**3.** In his concurring opinion in *Robbins v. California*, —— U.S. ——, ——, 101 S.Ct. 2841, 2848, 69 L.Ed.2d 744 (1981), Justice Powell, who was a member of the majority in *New York v. Belton*, —— U.S. ——, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981), characterized the *Belton* rationale as follows:

> *Belton* trades marginal privacy of containers within the passenger area of an automobile for protection of the officer and of destructible evidence. The balance of these interests strongly favors the Court's rule. The occupants of an automobile enjoy only a limited expectation of privacy in the interior of the automobile itself. *See Almeida-Sanchez v. United States*, 413 U.S. 266, 279, 93 S.Ct.

2535, 2542, 37 L.Ed.2d 596 (1973) (Powell, J., concurring). This limited interest is diminished further when the occupants are placed under custodial arrest. *Cf. United States v. Robinson*, 414 U.S. 218, 237, 94 S.Ct. 467, 477, 38 L.Ed.2d 427 (1973) (Powell, J., concurring). Immediately preceding the arrest, the passengers have complete control over the entire interior of the automobile, and can place weapons or contraband into pockets or other containers as the officer approaches. Thus, practically speaking, it is difficult to justify varying degrees of protection for the general interior of the car and for the various containers found within.

*fortiori*, Allen's search of the grocery bag must be upheld as a lawful search incident to a lawful custodial arrest.

## IV.

Because of our ruling that the grocery bag search made by Officer Allen was lawful, our interest in resolving whether any expectation of privacy exists with regard to a paper bag is considerably diminished. Prior to *Belton*, the issue in this case which had assumed prominence, was the question: "Is a paper bag—in this case a grocery bag—protected from search by its owner's reasonable expectation of privacy?" The recent Supreme Court case, *Robbins v. California, supra*, bears on this issue.

*Robbins* differs from *Belton* in that the contraband discovered by the officers in *Robbins* was found in the "trunk"[4] of Robbins' vehicle and consisted of two packages wrapped in green opaque plastic. A description of the packaging is found in the *Robbins* opinion:

> The package ... is apparently wrapped or boxed in an opaque material covered by an outer wrapping of transparent, cellophane-type plastic. (The photograph is not in color, and the "green" plastic cannot be seen at all.) Both wrappings are sealed on the outside with at least one strip of opaque tape. As thus wrapped and sealed, the package roughly resembles an oversized, extra-long cigar box with slightly rounded corners and edges. It bears no legend or other written indicia supporting any inference concerning its contents.

—— U.S. at —— n.1, 101 S.Ct. at 2844 n.1. The Court of Appeals of California had held that Robbins could not have had a reasonable expectation of privacy in these packages and thus upheld the denial of Robbins' motion to suppress their contents.

The Supreme Court, in a plurality opinion, reversed and made the following observations with respect to container searches: "[A] closed piece of luggage found in a lawfully searched car is constitutionally protected to the same extent as are closed pieces of luggage found anywhere else";[5] "[the Fourth Amendment] protects those effects whether they are 'personal' or 'impersonal'"; "[o]nce placed within such a [closed, opaque] container, a diary and a dishpan are equally protected by the Fourth Amendment"; "[w]hat one person may put into a suitcase, another may put into a paper bag. *United States v. Ross*, 655 F.2d 1159 (D.C. Cir. 1981) (en banc). And as the disparate results in the decided cases indicate, no court, no constable, no citizen, can sensibly be asked to distinguish the relative 'privacy interests' in a closed suitcase, briefcase, portfolio, duffle bag, or box"; "'[s]ome containers (for example a kit of burglar tools or a gun case) by their very nature cannot support any reasonable expectation of privacy because their contents can be inferred from their outward appearance. Similarly, in some cases the contents of a package will be open to "plain view," thereby obviating the need for a warrant'" (quoting *Arkansas v. Sanders*, 442 U.S. 753, 764–65 n.13, 99 S.Ct. 2586, 2593–94 n.13, 61 L.Ed.2d 235 (1979)); "[e]xpectations of privacy are established by general social norms, and to fall within the second exception of the footnote in question [*Arkansas v. Sanders*, 442 U.S. 753, 764–65 n.13 [99 S.Ct. 2586, 2593–94 n.13, 61 L.Ed.2d 235]] a container must so clearly announce its contents, whether by its distinctive configuration, its transparency, or otherwise, that its contents are obvious to an observer." —— U.S. at —— – ——, 101 S.Ct. at 2844–48.

The Supreme Court thereupon held that the two packages of marihuana, wrapped in brick form in green, opaque plastic, did not meet the *Sanders* exception and therefore could not be searched without a warrant, even though they were found during the

---

**4.** Robbins was driving a station wagon. On opening the tailgate of the station wagon, the officers located a handle set flush in the deck. On lifting it up they uncovered a recessed luggage compartment in which the two packages were found.

**5.** *Cf. Belton, supra*, —— U.S. at ——, 101 S.Ct. at 2861.

course of a lawful search of the station wagon.

■ Summarizing, therefore, the teachings imparted by both *Belton* and *Robbins*, it appears that any container, regardless of its opacity, or whether it is sealed, may be searched if it is found in the interior of the passenger compartment of a vehicle after a lawful arrest has been effected. If, however, the container is not found in the interior or passenger compartment of the vehicle, but rather is discovered in the trunk of the vehicle, then it may not be opened without a search warrant, unless by its very appearance or distinctive configuration or otherwise, its contents are obvious to the observer.

■ For the three reasons which we will discuss, we do not believe that the Honda search in the instant case is controlled by *Robbins*. First, and most important, we do not regard a grocery bag, which the record does not reveal to have been closed or sealed, to possess the same degree of "privacy expectations" as a sealed, opaque plastic package. Second, *Robbins*' packages were discovered in the trunk of his vehicle, rather than in the passenger compartment. Abiff's grocery bag was found on the back seat of the Honda. Finally, *Robbins* is a plurality opinion, which depends for its judgment on Justice Powell's concurring opinion, an opinion which eschews the lead opinion's rationale.

Our position respecting the diminished privacy expectations in a paper bag search finds ample support both in Supreme Court cases preceding *Robbins* as well as pre-*Robbins* decisions of our court and other circuits. In *United States v. Chadwick*, 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977), and in *Arkansas v. Sanders*, 442 U.S. 753, 99 S.Ct. 2586, 61 L.Ed.2d 235 (1979), the Supreme Court analyzed warrantless searches of various containers found in automobiles. In *Chadwick*, the court held the warrantless search of a locked footlocker found in the trunk of defendant's parked automobile to

be unconstitutional. 433 U.S. at 15–16, 97 S.Ct. at 2485–2486. It reached the same conclusion in *Sanders* with respect to the search of an unlocked suitcase found in the trunk of a taxi in which the defendant was riding. Nevertheless, the Supreme Court in *Sanders* clearly emphasized "expectations of privacy" considerations when it limited its holding to the context of personal luggage. It thus made the following observation:

> Not all containers and packages found by police during the course of a search will deserve the full protection of the Fourth Amendment. Thus, some containers (for example a kit of burglar tools or a gun case) by their very nature cannot support any reasonable expectation of privacy because their contents can be inferred from their outward appearance. Similarly, in some cases the contents of a package will be open to "plain view," thereby obviating the need for a warrant. *See Harris v. United States*, 390 U.S. 234, 236, 88 S.Ct. 992, 993, 19 L.Ed.2d 1067 (1968) (*per curiam*).

442 U.S. at 764–65 n.13, 99 S.Ct. at 2593–94 n.13. The *Sanders* Court did not, however, provide any specific guidance regarding what types of containers require a warrant before being searched.

Our court subsequently described *Chadwick* and *Sanders* as being based on the premise that an arrested individual may have an independent privacy interest in the property in his possession, and that to intrude on that interest requires either a warrant or one of the traditional exceptions to the warrant requirement. *United States v. Bush*, 647 F.2d 357, 371 (3d Cir. 1981). *See also United States v. Mannino, supra*, 635 F.2d at 113. Thus, in determining whether the search of a paper bag invades interests protected by the Fourth Amendment, "[t]he critical inquiry under *Chadwick* and *Sanders* is the extent to which the object searched is protected by its owner's 'reasonable expectation of privacy.' " *Mannino, supra*, 635 F.2d at 113.[6]

---

6. Since the Supreme Court's decision in *Sanders, supra*, our court has not had occasion to

consider the expectation of privacy which attaches to a paper bag found in an automobile.

In *United States v. Ross,* 655 F.2d 1159 (D.C.Cir. 1981), an *en banc* decision of the Court of Appeals for the D.C. Circuit, it was held that the Fourth Amendment requires that police must obtain a warrant before searching any parcel found in an automobile even after they have lawfully stopped the car, detained any person in it suspected of criminal activity, and secured any parcels found in the car. *Ross, supra,* at 1171. The parcels involved in *Ross* were a closed, but unsealed, brown paper sack and a zippered red leather pouch, both of which were found in the car's trunk. Although the government conceded that the pouch was covered by the rule in *Sanders* and thus could not be searched, it urged that the same result should not obtain with respect to the paper bag, claiming that a paper bag is not a protected repository for personal effects. In rejecting the government's position, the majority concluded that "*Sanders* did not establish a 'worthy container' rule encompassing bags of leather but not of paper." *Ross, supra,* at 1161.

Addressing himself to the "paper bag" issue, Judge Tamm disagreed with the majority's conclusion. He argued that although a pouch is a form of luggage and thus may fall within the ambit of *Sanders,* Ross did not, in the circumstances of the *Ross* case, have a reasonable expectation of privacy in the contents of the paper bag once it was in police hands. He distinguished paper bags from personal luggage in at least two significant respects:

First, paper bags offer at best only minimal protection against accidental and deliberate intrusions. A paper bag can fall open or break very easily. It presents no real obstacles to invasions by the curious or the dishonest once it has left its owner's actual possession. Because it is neither so secure nor so permanent as typical forms of luggage, its contents are much more likely to become subject to public display than if the same items had been stored in luggage. Thus, it is doubtful that one realistically can expect a paper bag to remain closed or intact, its contents unrevealed, at least if it has left its owner's hands. *See United States v. Mackey,* 626 F.2d 684, 687 (9th Cir. 1980). *Cf. United States v. Neumann,* 585 F.2d 355 (8th Cir. 1978) (cardboard boxes not secure; inventory search justified).

Second, paper bags are not *inevitably* associated with the expectation of privacy. *See Arkansas v. Sanders,* 442 U.S. 753, 762, 99 S.Ct. 2586, 2592, 61 L.Ed.2d 235 (1979). Although a paper bag *may* be pressed into service as a repository of personal effects, I do not believe a reasonable man would identify a paper bag as a normal place to entrust his intimate personal possessions. In contrast, luggage in general serves to carry clothes, toiletries, and other items associated with

---

Our decisions involving paper bags, satchels and other containers have been predicated on other theories.

In *United States v. Vento,* 533 F.2d 838, 865–67 (3d Cir. 1976), a pre-*Sanders* decision, our court upheld a warrantless search of defendant's vehicle under the exigent circumstances doctrine in *Chambers v. Maroney,* 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970), and made the following observation with respect to the search of a brown paper bag found in defendant's car:

At oral argument, but not in their briefs, defendants made the further contention that the DEA agents should not have opened the paper bag that was found in the car. Instead, defendants claim, they should have seized the bag and obtained a search warrant to open it. Here the contents of the bag were the very object of a legitimate search under

exigent circumstances. The agents had probable cause to believe that the bag contained methamphetamine. In these circumstances, to restrict the agents from opening the bag would appear to strain the meaning of the Fourth Amendment and erode the powers of the police to conduct legitimate searches efficiently.

533 F.2d at 867 n.101. In another pre-*Sanders* decision, *United States v. Milhollan,* 599 F.2d 518, 526–27 (3d Cir.), *cert. denied,* 444 U.S. 909, 100 S.Ct. 221, 62 L.Ed.2d 144 (1979), we upheld a warrantless search of a closed but unlocked satchel found in defendant's car on the grounds that the search of the vehicle itself was justified under *Chambers,* the satchel's contact with the automobile was more than incidental, and the intrusion into the automobile was not a pretext for a search of the satchel.

day-to-day living. Luggage typically functions as a portable closet and chest of drawers; it follows that a person could justifiably maintain a substantially higher expectation of privacy in his personal luggage than in a paper bag.

*Id.* at 1177–78 (Tamm, J., dissenting in part) (footnote omitted).

The result reached by Judge Tamm in *Ross*, with respect to expectations of privacy in paper bags, comports with the conclusion of virtually every other court confronted with a warrantless search of a paper or plastic bag found in an automobile, albeit in a pre-*Robbins* context. *See, e. g., United States v. Delos-Rios*, 642 F.2d 42 (2d Cir.), *cert. denied*, —— U.S. ——, 101 S.Ct. 2025, 68 L.Ed.2d 330 (1981) (no independent expectation of privacy with regard to a partially opened paper bag found in back seat of car); *United States v. Sutton*, 636 F.2d 96 (5th Cir. 1981) (warrantless search of paper sack from a local pharmacy found on front floorboard of automobile driven by defendant upheld); *United States v. Foskey*, 636 F.2d 517 (D.C.Cir.1980) (defendant did not have reasonable expectation of privacy with respect to contents of paper bag which was wrapped around gas pipe of automobile); *Mannino, supra,* 635 F.2d at 114 (no expectation of privacy in folded over paper bag found inside folded white plastic bag located on the front seat); *United States v. Brown*, 635 F.2d 1207 (6th Cir. 1980) (defendant had no legitimate expectation of privacy in an unsealed paper bag taken from the trunk of his automobile); *United States v. Mackey, supra*, 626 F.2d at 687 (paper bag found beneath front seat on the passenger's side not entitled to expectation of privacy); *United States v. Goshorn*, 628 F.2d 697 (1st Cir. 1980) (in order to support an inference of a reasonable expectation of privacy with regard to a paper or plastic bag, must show that bags were sealed or otherwise secured). *See also Bush, supra*, 647 F.2d at 371 (no expectation of privacy with respect to unsecured card-

board box, with a partially ajar lid, found in trunk of vehicle).

We recognize that the vitality of these cases may have been undermined by the Supreme Court's recent decision in *Robbins, supra,*[7] which cited *Ross* in the context of equating closed containers with paper bags, and which seemingly discounts the second consideration noted by Judge Tamm in his dissenting opinion in *Ross, supra.* As our discussion of *Robbins* reveals, however, we perceive substantial distinctions not only between the opaque wrapped packages found in *Robbins* and the types of paper bags which were the subjects of the foregoing cases and the case *sub judice*, but also between the relevant circumstances of *Robbins* and the instant case.

It cannot be overlooked that the rationale of *Robbins* did not command a majority of the Court. *See* Comment, *The Precedential Value of Supreme Court Plurality Decisions*, 80 Colum.L.Rev. 756 (1980) (discussing the difficulties presented by plurality decisions). Justice Powell, whose concurrence in the judgment was necessary in order for the *Robbins* search to be invalidated, took issue with the lead opinion's departure from the Fourth Amendment's "basic concerns with interests in privacy." —— U.S. at ——, 101 S.Ct. at 2849. Justice Powell's position reaffirms the principle that

Chadwick and Sanders require police to obtain a warrant to search the contents of a container only when the container is one that generally serves as a repository for personal effects or that has been sealed in a manner manifesting a reasonable expectation that the contents will not be open to public scrutiny. *See Chadwick, supra*, 433 U.S. at 13, 97 S.Ct. at 2484; *Sanders, supra* [442 U.S.] at 764, [99 S.Ct. at 2593].

*Id.* at ——, 101 S.Ct. at 2849.

In adhering to an analysis predicated upon a reasonable expectation of privacy, it

---

7. For example, *United States v. Jimenez*, 626 F.2d 39 (7th Cir. 1980), *vacated and remanded*, —— U.S. ——, 101 S.Ct. 3152, 69 L.Ed.2d 1000 (1981), which held that no expectation of priva-

cy exists with regard to a paper bag found in a car trunk, was vacated by the Supreme Court and remanded in light of *Robbins*.

is significant that Justice Powell cites to the very cases permitting paper bag searches to which we have referred, including Judge Tamm's dissenting opinion in *Ross, supra.* A fair reading of Justice Powell's separate opinion, therefore, is that he concurred only because the search of the two packages of marihuana violated Robbins' reasonable expectation of privacy. This conclusion is manifested in Justice Powell's opinion by his statement expressing his reasons for declining to join the lead opinion:

> As the plurality today goes well beyond *Sanders* or any other prior case to establish a new "bright line" rule, I cannot join its opinion.[1] *It would require officers to obtain warrants in order to examine the contents of insubstantial containers in which no one had a reasonable expectation of privacy.* The plurality's approach strains the rationales of our prior cases and imposes substantial burdens on law enforcement without vindicating any significant values of privacy. I nevertheless concur in the judgment because the manner in which the package at issue was carefully wrapped and sealed evidenced petitioner's expectation of privacy in its contents.

---

[1] The plurality's "bright-line" rule would extend the warrant clause of the Fourth Amendment to every "closed, opaque container," without regard to size, shape or whether common experience would suggest that the owner was asserting a privacy interest in the contents. The plurality would exempt from the broad reach of its rule only those "closed, opaque containers" where, because of shape or some other characteristic, the "contents may be said to be in plain view." In accordance with the plurality's usage I use the term "container" to include any and all packages, bags, boxes, tins, bottles and the like.

*Id.* at ——, 101 S.Ct. at 2847 (emphasis supplied).[8]

Thus, we have no unequivocal instruction from *Robbins* to guide us in our determina-

---

8. The dissenting opinions in *Robbins* largely focused on the "automobile exception" doctrine, and would have authorized the search of the marihuana packages without specific reference to any reasonable expectation of privacy.

tion of whether a grocery bag, which the record does not reveal as having been sealed or closed, and which was not within a locked area of the vehicle such as the trunk, can be the subject of a Fourth Amendment search.

We are satisfied, however, that there are sufficient distinguishing characteristics that were present in the Abiff search so that in resolving this issue, had we been remitted wholly to the law of container searches, as it appeared prior to *Robbins*, we would have been content to uphold the search made by Officer Allen. We would have done so on the basis that a paper bag, such as the grocery bag in issue here, does not possess that degree of "expectation of privacy" as would preclude a search, absent a search warrant. That conclusion is not altered by *Robbins*. In the context of this case, we are satisfied that the considerations which find expression in Judge Tamm's dissenting opinion in *Ross* are both relevant and compelling, and require the same result in this case which Judge Tamm had urged in *Ross.*

## V.

We therefore conclude that because the search conducted by Officer Allen satisfied the *Belton* criteria, that search must be upheld. Alternatively, because we conclude that no expectation of privacy attached to the grocery bag searched by Allen, that search did not violate Abiff's Fourth Amendment rights.

The district court thus erred in its ruling which suppressed as evidence the revolver contained in the paper bag. We will therefore reverse the district court's order of November 7, 1980, and we will remand for a trial on the two weapons counts.[9]

ADAMS, Circuit Judge, concurring.

I concur in the result reached by the majority, because I agree that *New York v.*

---

9. The record does not disclose whether Abiff has been tried in the interim on the charge that he assisted an escaped prisoner in violation of 14 V.I.C. § 661(1) and 12. If he has not, then obviously that trial may be conducted simultaneously with the trial on the weapons charges.

*Belton,* —— U.S. ——, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981), governs the admissibility of the evidence in this case. Having determined that *Belton* is the applicable precedent, however, I find it unnecessary to engage in an analysis of whether the brown paper bag falls within the rationale of *Robbins v. California,* —— U.S. ——, 101 S.Ct. 2841, 69 L.Ed.2d 744 (1981).

The effort to draw bright lines between car trunks and interiors, or between suitcases and cardboard containers, plastic bags, and brown grocery sacks bound with or without string, has sharply divided the Supreme Court [1] as well as the en banc Court of Appeals for the District of Columbia Circuit.[2] Lack of coherent guidance for resolving the issues in this case may make the temptation to slip into dubious distinctions ineluctable, and highlights why, in my view, the time is especially ripe for re-examining the exclusionary rule.

Many eminent jurists and scholars have already leveled cogent criticisms against this judicially-crafted evidentiary rule,[3] and it is not my intention to repeat them *in extenso.* But the problem of criminal procedure exemplified by this case shows with unusual clarity how far application of the exclusionary rule has strayed from the practices it was designed to deter.

The rule was adopted in *Weeks v. United States,* 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914), a case that arose when the police illegally broke into the defendant's home while he was at work and seized innocuous private papers such as letters, books, bonds, and stock certificates. The Supreme Court emphasized that the sanctity of one's home and private papers represented the historical heart of the Fourth Amendment, and that the officers' transgression of rights had been flagrant. Noting that courts must exercise their authority within the limitations of the Fourth Amendment, the Court reasoned that prosecutorial misconduct "should find no sanction in the judgments of the courts which are charged at all times with the support of the Constitution." 232 U.S. at 392, 34 S.Ct. at 344. Therefore, the Court declared, in order to protect the integrity of the judicial process, the improperly seized items must be excluded as evidence against Weeks.

*Mapp v. Ohio,* 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), in which the Court extended the exclusionary rule to bind state courts, presented another instance of obvious disregard of Fourth Amendment rights. Acting on a tip that a suspect was hiding in Mapp's home, the police went there, and when Mapp refused to admit them without a warrant they forcibly entered over her protests. The officers roughed-up Mapp, handcuffed her, and proceeded to plunder through virtually every drawer, closet, book, suitcase, and room in her home. In the words of the state court that tried Mapp, the officers' methods of obtaining evidence offended a basic sense of justice. To support its extension of the exclusionary rule the Supreme Court recited the protection of judicial integrity rationale that had been advanced in *Weeks,* and then offered an additional reason for the rule: to deter "official lawlessness in flagrant abuse" of basic rights and to compel police respect for the Fourth Amendment by "removing the incentive to disregard it." 367 U.S. at 656, 81 S.Ct. at 1692.

Twenty years of experience under the *Mapp* rule have demonstrated that the exclusionary rule no longer serves its dual

---

1. *Robbins* failed to command a majority, and that case together with *Belton* provoked 7 separate opinions.

2. *U. S. v. Ross,* 655 F.2d 1159 (D.C.Cir. 1981) (en banc).

3. *See, e. g., Bivens v. Six Unknown Fed'l Narcotics Agents,* 403 U.S. 388, 411, 91 S.Ct. 1999, 2012, 29 L.Ed.2d 619 (1971) (Burger, C. J., dissenting); Wilkey, *The Exclusionary Rule: Why Suppress Valid Evidence?,* 62 Judicature No. 5 at 215 (Nov.1978); S. Schlesinger, *Exclusionary Injustice: The Problem of Illegally Obtained Evidence* (1977); E. Griswold, *Search and Seizure: A Dilemma of the Supreme Court* (1975); McGowan, *Rulemaking and the Police,* 70 Mich.L.Rev. 659 (1972); Oaks, *Studying the Exclusionary Rule in Search and Seizure,* 37 U.Chi.L.Rev. 665 (1970). *But see* Kamisar, *A Reply to Critics of the Exclusionary Rule,* 62 Judicature No. 2 at 66 (Aug. 1978).

purposes of promoting judicial integrity and deterring police misconduct.[4] Indeed, various studies suggest that the rule has no deterrent impact, and produces adverse social consequences. *Mapp* has led to the reversal of innumerable state convictions, even though the evidence of criminal activity was compelling. Public respect for the integrity of the judicial process is hardly enhanced when citizens perceive the criminal "go[ing] free because the constable has blundered."[5] All too often the constable's mistakes are a far cry from the clear-cut abuses involved in cases such as *Weeks* and *Mapp*. Rather, the officer's reaction usually represents a measured response in a sensitive law enforcement situation, as in the present case. Frequently, the action seems permissible under Supreme Court pronouncements controlling at the time of the conduct in question; yet when the search later comes under judicial scrutiny it is proclaimed to be improper in light of subsequent decisions.

The situations presented in *Robbins, Belton*, and the current case illustrate this problem. At the time the officers performed the searches, they reasonably could have regarded their actions as justified under the automobile exception to the warrant requirement as adumbrated in *Chambers v. Maroney*, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970). It is quite significant that at least three members of the Supreme Court thought the searches at issue in *Robbins* and *Belton* fell within this exception. *See* —— U.S. at ——, 101 S.Ct. at 2851 (Blackmun, J., dissenting); *id.* at ——, 101 S.Ct. at 2851 (Rehnquist, J., dissenting); *id.* at ——, 101 S.Ct. at 2855 (Stevens, J., dissenting). Yet in *Robbins* a majority of justices found the search impermissible, without agreeing on a rationale,

while the searches performed under virtually identical circumstances in *Belton* and the present case have been sustained. As the divergent views of the Justices demonstrate, the state of Fourth Amendment jurisprudence may fairly be described as confused, or at least difficult to decipher. Under these circumstances, it is not realistic to expect the exclusionary rule to deter misconduct on the part of police officers. Often there is no misconduct to deter or punish—the officer has simply acted reasonably in a pressured situation and is later told he guessed wrong about how Supreme Court precedents might be interpreted to apply in fine-line situations.

When it is evident that a police officer has blatantly and intentionally violated the basic Fourth Amendment rights of a citizen, as in *Weeks* and *Mapp*, I believe that an argument may be advanced that the fruits of the illegal conduct should not be used in the judicial process. But this is a far different standard than that encompassed in the current exclusionary rule, which in effect punishes prosecutors and society because officers on the street are not legal scholars endowed with the ability to foresee constitutional developments.

One of the advantages of our system of government is that it allows for experimentation. But when time has proven that the experiment has not succeeded, it is necessary to recognize this fact and rectify it.[6] I believe such a time has been reached for the exclusionary rule.

I agree with the majority that the judgment of the district court should be reversed. A reasonable reading of *Belton* suggests that the search here did not violate the Fourth Amendment, because the police officers did not engage in clear misconduct or an unreasonable search. Thus,

---

4. *See* Wilkey, *supra*, note 3; Oaks, *supra*, note 3.

5. Justice Cardozo immortalized this observation in *People v. Defore*, 242 N.Y. 13, 150 N.E. 585 (1926).

6. At the time *Mapp* and *Weeks* were decided, viable alternative remedies had not yet been fashioned. The creation of a constitutional

cause of action for damages in *Bivens v. Six Unknown Fed'l Narcotics Agents*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), may provide solace for individuals injured by federal officers, and the recent expansion of § 1983 as a means of recovering for transgressions by state and local officers offers an alternative remedy for state defendants. *See* Wilkey, *supra* note 3.

neither the policy of deterrence nor that of judicial integrity compels the suppression of the fruits of the endeavor.